15985

BELL v. BANK OF ABBEVILLE
(44 S. E. (2d) 328)

*Messrs. J. M. Nickles* and *J. Moore Mars,* of Abbeville, for Appellant,

*Mr. C. T. Graydon,* of Columbia, for Appellant,

*Messrs. Blackwell, Sullivan & Wilson,* of Laurens, for Appellant,

*Messrs. Nicholson & Nicholson,* of Greenwood, and *Ralph J. Syfan,* of Abbeville, for Respondent,

September 2, 1947.

PER CURIAM.

This case is an action for slander. It has previously been before us on the pleadings (*Bell v. Bank of Abbeville,* 208 S. C. 490, 38 S. E. (2d) 641, 643) when we held that as against a demurrer interposed by the defendant, the complaint stated a cause of action.

Following the disposition of the appeal relating to the demurrer, the case came up for trial before the court and a jury and resulted in a verdict for Twenty-five Thousand ($25,000.00) Dollars in favor of the plaintiff. From the rulings made in the course of the trial below and in the disposition by the trial judge of a motion for a new trial, this appeal was taken.

The issues as made by the pleadings are sufficiently set forth in our opinion in the above cited case. It is unnecessary to restate these issues further than to say that the plaintiff

(respondent here) was a teller employed by the appellant bank; that the respondent and the cashier of the bank met at the bank at the invitation of the latter for a discussion of alleged complaints of irregularities made by customers of and persons connected with the bank; that after some discussion between the respondent and the cashier (the cashier being one of the directors of the bank), two other members of the Board of Directors were called into the meeting and that in their presence the statements made by the cashier to the respondent were repeated; and that subsequently, outside of the presence of the respondent, substantially the same statements were repeated to the remaining two directors of the bank.

Appellant's answer, without specifically denying such of the allegations of the complaint as set forth the alleged slanderous remarks, alleges that the statements made on the occasions in question "were made in complete good faith, with an interest to be upheld, on a proper occasion, and in a proper manner, to proper parties only, and with reference to business transactions in which all the parties present had a corresponding interest"; that the discussions were "confidential and privileged and not intended to be disclosed or published in any manner, and that any and all statements which plaintiff complains of as having been made, if made at all, was in the discharge of a legal and moral duty"; and that by reason of these and other facts alleged, "the Defendant specifically pleads the defense of qualified privilege * * * as a bar to recovery by the Plaintiff in this action".

The answer further alleges that the cashier of the bank had received "numerous reports and complaints * * * of the nature of those alleged in the complaint, as well as others, in business items of the bank handled by the plaintiff, P. E. Bell, in his official capacity as assistant cashier or teller that could not with common propriety be permitted to longer continue without calling them to the attention of the plaintiff, and that it was imperative that some action be

taken by the bank through its officers and directors with regard thereto in the interest of good banking, and in order to be able to retain a satisfied clientele and maintain the high standing of the defendant bank as a banking institution, confidence in the integrity of its officers and employees and accuracy in handling of business items being one of the most valuable assets of any banking corporation".

The record in the cause is voluminous. It is not improper to say that it is unduly so. Counsel on both sides, with the interposition of very few objections, went far afield in the presentation of the plaintiff's case and of the defense. Many pages of the record are devoted to such matters as the suggested inadequacy of the number and compensation of the employees of the appellant bank; to supervisory actions of one of the officers of the bank, which appeared to have been distasteful to the respondent and to some of the other employees; to the propriety of some practices of the bank as to which the respondent had no responsibility or duty; to the personal characteristics of the respondent and of the cashier; and to the financial success that had been achieved by one of the officers of the bank. None of these matters have any bearing upon the important legal questions that are present in this case.

And although no objections were interposed or motions made on the subject, the result of the trial suggests that the matters above referred to, together with inflammatory statements and irrelevant and disparaging remarks incorporated in questions asked and comments made by plaintiff's counsel in the course of the trial might have had something to do with the verdict.

We think that the fundamental error of the court was in refusing appellant's motions for a nonsuit and for a direction of verdict.

> The primary question in this case is whether the circumstances under which the alleged slanderous statements were made are such that, assuming the state-

ments to be legally slanderous, the occasion was privileged. If it was, we have already held that the cause of action is not maintainable unless the privilege was abused as a means to defame the respondent. *Bell v. Bank, supra.* The privilege of which we speak is of course the *qualified privilege* which attaches to communications between an employer and an employee when the occasion is a *bona fide* inquiry by the employer into the alleged misconduct of the employee. As we said in our opinion in the earlier appeal in this case:

"On the face of the amended complaint, the alleged defamatory statements appear to have been made upon a privileged occasion. But whether or not the privilege was exceeded is an issue to be met upon the trial of the case, in which the burden will be upon the plaintiff to show express or actual malice. This question cannot be decided upon a demurrer to the complaint. The defendant cannot get the benefit of the defense of qualified privilege without setting it up as an affirmative defense."

And we further said in such opinion:

"Ordinarily, proof of a defamatory publication, charging another with the commission of a crime, makes out a *prima facie* case of malice in the author. But a privileged communication is an exception to the rule. In such case the presumption of malice is rebutted. The effect is to cast upon the plaintiff the necessity of showing malice in fact—that is, that the defendant was actuated by ill will in what he did and said, with the design to causelessly and wantonly injure the plaintiff. This actual malice, resting as it must upon the slanderous matter itself, and the surrounding circumstances tending to prove fact and motive, is a question to be determined by the jury. * * *"

And of course when we said that the questions whether the case was one of actual malice, and whether the surrounding circumstances tended to prove fact and motive, were questions for the jury, we said so in the light of the well-settled principles stated in the case of *Hunsucker v. State*

*Highway Department,* 182 S. C. 441, 189 S. E. 652, 656, as follows:

"If it be said that there was a scintilla of evidence adduced by the plaintiff in chief sufficient to send the case to the jury, which is not admitted, we apply another rule which is stated by this court in *National Bank [of Honea Path] v. Thomas J. Barrett, Jr., & Co.,* 173 S. C. 1, 174 S. E. 581, 582, in these words:

"'If it be conceded that there may be deduced by a process of unusual finesse of reasoning that there is a scintilla of evidence, * * * nevertheless there is another rule, more founded upon common sense and reason, to the effect that when only one reasonable inference, not just one inference, but one reasonable inference, can be deduced from the evidence, it becomes a question of law for the court, and not a question of fact for the jury.'

"This rule has been several times affirmed by the court.

"In *Turner v. American Motorists Ins. Co.,* 176 S. C. 260, 180 S. E. 55, this court said quoting syllabus 3: 'Scintilla of evidence on which case should be sent to jury must be real, material, pertinent, and relevant evidence, and not speculative and theoretical deductions.'"

In proceeding to a consideration of the testimony, the question before us may be stated to be: Assuming the statements in question to be slanderous in character, were they uttered in good faith in the pursuit of the business of the bank by and to persons who had a right to hear and consider such statements, at a time and place and in a manner and under circumstances which effectually negative the existence of a purpose to injure and defame the respondent; or were the statements made maliciously, or without any proper occasion for the making of the same, and in such manner or under such circumstances that it may be reasonably inferred that the object of the parties was not to *bona fide* act in the pursuit of the business of the appellant, but to use the excuse of a meeting of the officers and directors to injure and defame the respondent?

174

In answering these questions we are not concerned with the guilt or innocence of the respondent in respect to the matters charged in the alleged slanderous statements quoted in the complaint and disclosed by the testimony. The very essence of the respondent's case, both as alleged in the complaint and as shown by the testimony, is that the cashier of the bank quoted to the respondent, in the presence and hearing of two directors of the bank, complaints which the cashier stated had been made by customers as to the manner in which the respondent handled their banking transactions, and by persons connected with the bank as to matters which seemed to them to be irregular and improper.

Nothing that is said herein either adjudicates or assumes the truth of the charges made by the bank's customers or by others; the material matter is that the action is founded on the statements which the cashier made as to the nature and substance of the complaints which he said had been made to him, and while the testimony is conflicting in one or more instances as to whether the conduct and statements of certain of the customers in question amounted to *complaints* in some technical sense, the record is undisputed on the fact that customers of the bank did in fact state to the cashier and other officers of the bank that their dealings with the respondent involved the precise character of irregularities which the respondent quotes in his complaint and details in his testimony as the foundation of his action.

The respondent himself answered affirmatively when he was asked on cross-examination: "And you have been charged by customers that you gave them back less money than they were entitled to receive?" And he admitted taking for his personal use a small amount of money from the "stamp box" of the bank. That the errors made in dealing with the customers of the bank were innocent mistakes which in some instances were corrected when called to the respondent's attention, rather than "irregularities", and that the money taken from the "stamp box" was refunded by the respondent (this is expressly denied, however, by the ap-

pellant) does not touch the issue in this case. In spite of everything which the respondent says by way of exculpating himself from any possible charge or inference of intentional wrongdoing, the fact remains that the record does not contain effectual denial of the truth of the statement of the cashier that the complaints in question had been made to him, and of the position of the cashier that it was his duty to report these complaints and matters to the Board of Directors. We refrain from going into further detail as to the evidence relating to the matters in question solely because of the determination that we will not create any possible inference of guilt of crime against the respondent, this being a matter with which the present case is not directly concerned.

Reverting to the primary question whether there is in the record any credible testimony pointing to the fact that the occasion was used for the unlawful purpose of defaming and injuring the respondent, rather than to make a *bona fide* inquiry into complaints against the handling of the bank's affairs, we are unable to find in the record anything substantial upon which to support the burden which rested on the respondent to prove his case.

The cashier of the bank was confronted with the existence of alleged irregularities; it was his duty to deal with these complaints. He had no power to discharge or discipline the respondent, these being matters reserved by the directors to their own control. He therefore called into the situation two directors who with himself, constituted a majority of the Board, and after discussion of the matter (taking the respondent's version of the case) the respondent was required to resign or was discharged. The cashier then brought the same matters to the attention of the other two members of the Board, who concurred in the action taken.

We are not trying the issue as to whether the directors had sufficient grounds for their action, or whether they acted with sound discretion in appraising the complaints of the

customers and in bringing them to the attention of the respondent. We are inquiring into the far more limited question whether there is in the record any evidence for submission to a jury on the question in the case upon which the respondent had the burden of proof, to-wit, the showing of malice in fact—"that is, that the defendant was actuated by ill will in what he did and said, with the design to causelessly and wantonly injure the plaintiff". *Bell v. Bank of Abbeville, supra* (208 S. C. 490, 38 S. E. (2d) 643).

The respondent relies upon various factors in the testimony as showing such a malicious purpose on the part of the appellant. He offered much testimony tending to prove strained relations between himself and the cashier, due to various incidents which the respondent alleged created such relationship. But we are unable to perceive that this situation, if it had been correctly shown by the respondent, could be held to meet the burden resting upon the respondent. The bank's directors, as far as the record discloses, had the right and power to discharge the respondent at any time, with or without cause. Except for the desire of the cashier (as he stated the matter to the respondent at the time of the incident) to give the respondent an opportunity to hear the charges and to make his reply thereto to the directors, any strained relationship between the parties would have more likely resulted in the discharge of the respondent without a hearing.

It is suggested that the directors of the bank were angry with the respondent because of some activity on his part in connection with his negotiations to obtain another job. These negotiations took place many months before the incident in question in this case occurred. In view of the aforestated power of the directors to deal with the situation as they thought best from the standpoint of the interests of the bank, we can find no indications of express malice here, even if we assume any dissatisfaction or displeasure on the part of the directors in respect to the matter in question.

Another foundation upon which the respondent rests his claim of a showing of express malice is that the respondent, who had no personal responsibility in the premises, criticized the cashier because of alleged overdraft practices; that the cashier's attitude toward the plaintiff for a period of months prior to the incident was cold and aloof, whereas previously it had been most cordial and friendly; that the respondent had criticized the cashier and the vice-president of the bank (the latter being the owner of fifty-two per cent. of the capital stock of the bank) for alleged interference with or critical and unseemly supervision of the respondent and other employees of the bank; that he had criticized the cashier and the other directors of the bank because of the generous bonus paid to the cashier and of a much smaller bonus to him and the other employees. None of these and of a number of similar matters appeal to us as having any probative value on the question of the existence of express malice as the inspiration of the disclosures made by the cashier of the complaints of customers of the bank. If such criticisms on the part of the respondent did in fact motivate the directors in determining to discharge the respondent, they were well within their legal rights, regardless of the justice or injustice of the criticisms in question.

In a further effort to meet the respondent's burden to establish malice as the foundation of the incident in question, reference is made in the testimony and argument to the fact that although the respondent had for many years, since the day of the opening of the bank, entered the bank each morning without restrictions, prior to the opening hour, so as to get ready for the day's business, the vice-president of the bank one day ordered him never again to enter the bank alone in the early morning, but to always see that some other employee or officer of the bank accompanied him when he made the entry. The officer in question, testifying for the appellant, stated that the reason for this instruction was that it was unsafe for the vault in the bank to be opened and the money and securities of the bank exposed with only

one person in the bank. But regardless of this, the respondent offers no answer to the wisdom or propriety of the instruction given him, though he undertakes to infer from it an aspersion upon his integrity. Nor is this one of the matters alleged in the complaint, either as the foundation of the action or as one of the many separate instances stated in the complaint by way of aggravation of or support for the charge of malice upon which the maintenance of the action depends.

To refer specifically to the many other matters upon which the respondent relies to indicate the existence of ill feeling toward him on the part of the officers and directors of the bank would extend this opinion to undue length. We have considered all of such matters upon which the respondent relies and we classify them as similar to or comparable with the matters hereinabove stated, and as lacking to the same extent in any probative value on the issue before the court.

Much is sought to be made on the respondent's behalf of the fact that the bank in question has resources of over three million dollars and that the aggregate of the several amounts involved in the alleged irregularities set forth by the respondent himself in his complaint is less than fifty dollars. The argument on this score appears to be that this in itself is an indication that the action of the directors of the bank was inspired by malice. We don't think so. The items of alleged irregularity which the respondent brings out in his complaint and in his testimony are not all of the alleged irregularities which are disclosed by the record; and even if these additional alleged irregularities are comparatively slight, it is to be borne in mind that we are dealing with a bank, the delicacy of whose operations with the public is of vital importance, and that it is not for us to say that though the actual complaints disclosed by the record relate to a very small sum, the directors could not have feared or concluded that there might arise numerous other items of a similar character that would seriously reflect upon the management of the bank.

It is to borne in mind that the officers and directors of the bank, when meeting privately, with an employee of the bank whose conduct is in question, constitute the *alter ego* of the bank. They are not in the position of employees, or even of officers and directors, who in the conduct of the affairs of the bank committed to their exclusive care, deal with outsiders, and in the course of such dealings make statements in the presence of others which are slanderous in character.

We again say in justice to the respondent that we are adjudicating and insinuating nothing against him. We are merely seeking to determine whether in the actions of the directors of the bank, including the cashier (regarding them both singly and as a group), there is any evidence of express malice on their part in communicating to the respondent in a secret meeting the complaints upon which they stated they were acting, and in requiring him to resign or discharging him.

It has been brought to the attention of the court that since the argument of this case the respondent has died, and a motion is pending before us to substitute the personal representatives of the estate of the respondent as parties to the litigation. This motion is granted. Any further proceedings in this case will be entitled accordingly.

The judgment is reversed, with instructions to the Circuit Court to enter up judgment for the appellant in accordance with Rule 27 of this court.

BAKER, CJ., and FISHBURNE, STUKES, TAYLOR, and OXNER, JJ., concur.