16776

ANDERSON v. SOUTHERN RY. CO. ET AL.

(77 S. E. (2d) 350)

*Messrs. Frank G. Tompkins, Jr.,* of Columbia, and *Sam R. Watt,* of Spartanburg, *for Appellants,*

*Messrs. Walker & White,* and *J. R. Flynn,* and *John D. Long,* of Union, and *Franklin Parks,* of Jefferson City, Tenn., *for Respondent,*

Aug. 24, 1953.

STUKES, JUSTICE.

This action was brought by a discharged railroad passenger conductor, now deceased, against his former employer, his union, the local division of it and B. J. Coleman, who was another conductor and chairman of the division. Pretrial appeal is reported in *Edgar v. Southern R. Co.,* 213 S. C. 445, 49 S. E. (2d) 841, and further reference to the decision of it will be made infra.

Upon trial, plaintiff was nonsuited as to the union and the local division of it, without opposition by his counsel to their timely motion therefor. Verdict was returned by the jury in favor of plaintiff against the railway companies alone, thus absolving Coleman of liability; the railway companies have appealed; they have been treated in the action as, and may be deemed for the purpose of the appeal to be, one and the same, and they will be referred to as "the railway company" or "the company," or simply as the defendant.

The complaint alleged a meeting and conspiracy by the railway company through its general manager and division superintendent, the unions through their local chairman, Coleman, and the latter individually, in which it was agreed to deprive plaintiff of his employment which they did, whereby his seniority and retirement rights were destroyed and he was slandered and otherwise injured. It may be said parenthetically that at the time of the trial the plaintiff was receiving substantial monthly payments of disability benefits under the Railroad Retirement Act, 45 U. S. C. A. § 228a *et seq.*

The gravamen of the complaint was contained in the ninth paragraph, which follows:

"9. Thereafter and on or about September 26, 1945, pursuant to and in furtherance of the aforesaid scheme and conspiracy, a meeting, attended by a large group of persons, was held by the defendants in the Office of Superintendent of the defendant Southern Railway Company in Columbia, South Carolina, at which meeting the contents of the aforesaid affidavits as well as the insinuations and charges of embezzlement necessarily arising therefrom, were aired, published and disclosed to various and sundry persons who were present at said meeting, in addition to the publication of the contents of said affidavits to the Notaries Public before whom the same were sworn to and subscribed as above alleged; and in and by such publications, and the circumstances attending and surrounding the same, the defendants purposed and intended to and did thereby charge, and conveyed to those present at said meeting as well as other persons in railroad circles, the malicious charges and insinuations that the plaintiff was a thief and an embezzler, that he was dishonest and corrupt in the discharge of his official trust and duties as a railway conductor, that he had betrayed the passengers or customers of the defendant railroad companies, that he was unfit to be trusted, his integrity impeached, and he unworthy of confidence and trust."

There was no cause of action for conspiracy left after the unopposed order of involuntary nonsuit in favor of the union and local division and after the verdict of the jury in favor of Coleman, from which there was no appeal; the company could not conspire with itself. *Goble v. American Ry. Express Co.,* 124 S. C. 19, 115 S. E. 900; 11 Am. Jur. 588, Conspiracy, Sec. 59; Annotation, 19 Ann. Cas. 1254. Nor under the evidence was there a cause of action for wrongful discharge, in contravention of the union contract, because plaintiff admitted violations of the applicable company rules relating to the handling and accounting for cash passenger fares, which it is not contended in the

brief was insufficient to warrant the lawful discharge of the plaintiff. Furthermore, in the above cited decision in the first appeal the complaint was construed to state a cause of action, quoting, "for an alleged conspiracy to damage and injure the plaintiff in his reputation and property", whereby the right, if any before, to recovery for wrongful discharge was eliminated. 213 S. C. at page 456, 49 S. E. (2d) at page 845. That became "the law of the case."

However, it is claimed by respondent that the verdict against the company alone is referable to the cause of action for libel and slander which survived the collapse of the alleged causes of action for conspiracy and wrongful discharge. *Goble case, supra; Green v. Smith,* 149 S. C. 303, 147 S. E. 333; 15 C. J. S., Conspiracy, § 31c, p. 1053. The authority of *True v. Southern R. Co.,* 159 S. C. 454, 157 S. E. 618, is conclusive to the contrary. Seldom is there so identical a precedent as is that case for this. The former distinguishing feature of the alleged conspiracy is gone perforce the order of nonsuit and the verdict in favor of Coleman. The *True case* was the action of a conductor for damages for libel which arose exactly as did the instant case; nonsuit of plaintiff was affirmed with citation of a wealth of supporting authorities which need here not be repeated.

The trial judge instructed the jury that their verdict should be founded upon the allegations of the complaint. Publication of the alleged libel and slander was alleged to have occurred at the meeting which is referred to in the ninth paragraph of the complaint, quoted above. But it was held to give opportunity to the plaintiff to answer the charges, which was required under the terms of the collective bargaining agreement between plaintiff's union and the company. Article 31 and the first paragraph of article 32 of it follow:

"Investigations and Discipline

"Conductors will not be discharged or demerited without an investigation, which will be made by proper officer within five days if possible, and in their presence. They will have

the privilege of bringing to the investigation to assist them a representative of their own selection, provided such person is an employee in good standing. If found blameless, they will be paid for time lost. If discharged, they will be furnished with a letter showing cause of dismissal, term of service, and the capacity in which employed. If demerited, they will be furnished with a written notice of same."

"Article 32

"(a) Adjustment Matters

"(1) No grievance will be entertained unless presented in writing to the Superintendent within sixty days after its occurrence. Conductors shall have the right to appeal, provided such appeal be made in writing within sixty days after the Superintendent has rendered his decision."

The investigation or hearing, also referred to above as the meeting, was held on September 26, 1945, in the private, upstairs office of the division superintendent in the Columbia Union Station building, conducted by the general manager and attended by only five other officials of the company; stenographic notes were taken and transcribed by the secretary to the general manager, of which copy was promptly furnished plaintiff upon request by him. He appeared at the investigation meeting with Coleman and a third conductor, now dead, both of whom he asked to go with him as his representatives and at the conclusion expressed his satisfaction with the fairness of it. He did not appeal as provided in the union contract, but long afterward brought this action on March 14, 1947. Coleman's conduct thereabout was vindicated by the evidence and, finally and conclusively, by the verdict; and nothing in the evidence inculpates plaintiff's other, now deceased, representative at the investigation; they attended upon plaintiff's request, as stated.

There can be no question of the privilege of the occasion under the precise authority of the parallel *True* case, *supra;* or, rather, there was no actionable publication. Such privileged publication as there occurred resulted from the follow-

ing of the provisions of the union contract which was entered into in behalf and for the benefit of plaintiff and his fellow-conductors, and it appears from the record of it that the hearing was conducted with circumspection and with consideration of plaintiff. It should be said that three other conductors of the Columbia Division of the company were summoned for investigation at the same time but they resigned from the service in advance of the times set for their respective hearings. All of this resulted from secret tests by the police department of the company of the daily accounting by the twenty active conductors of the division for cash passenger fares collected by them on their respective trains.

In paragraph 8 of the complaint it is alleged that the company procured false affidavits in substantiation of the charges against the plaintiff and numerous affidavits are specified as constituting such. Respondent's brief relies upon the alleged publication of the contents of the stated affidavits to the notaries who took the oaths of the affiants. Careful examination of these affidavits, which were exhibited at the trial, discloses that in all of the instances alleged in the complaint the notaries were employees of the company. See the authorities cited in *Rodgers v. Wise,* 193 S. C. 5, 7 S. E. (2d) 517, and *Watson v. Wannamaker,* 216 S. C. 295, 57 S. E. (2d) 477. They were, respectively, chief clerk to the comptroller of the company, executive clerk in the office of the vice president, and head clerk to the auditor of passenger accounts. The affiants were the secretary to the vice president, an employee of the police department of the company, and the auditor of passenger accounts. There were other affidavits in evidence; however, they were not included in the allegations of the complaint and the verdict for plaintiff could not have been predicated upon them, under the instructions to the jury from which there was no appeal by plaintiff. Our consideration upon appeal has therefore been limited to the affidavits specified in the complaint. There were affidavits also in the *True case, supra,* which were likewise without effect upon the result.

Moreover, the foregoing with respect to respondent's contention of publication of libelous matter concerning him by means of the procurement of the affidavits need not now be relied upon because the law of this feature of the case was fixed by the judgment on the first appeal. It was mainly a construction of the complaint, by which all of the parties to the action were thereafter bound. The following is quoted from pages 456, 457 of 213 S. C. from page 846 of 49 S. E. (2d) : "It is alleged that the charges set forth were made by the defendants at a meeting attended by them or their agents pursuant to the conspiracy to oust plaintiff from his job and that the charges 'were aired, published and disclosed to various and sundry persons *who were present at said meeting.*' (Emphasis added.) The publication is confined therefore to those present at the meeting attended by the defendants."

As pointed out above, the authority of the *True case* is clear and controlling that the meeting, to which reference was had in the above quotation, was privileged and there was no actionable publication thereat in the absence of malice. Respondent's effort in the brief to distinguish the case from the *True case* has not been overlooked; but there is no distinction of substance sufficient to avoid the precedent of it, in view of the contents of the complaint and evidence, the instructions to the jury and the verdict. In light of the facts, any presumption of malice disappeared and upon them there could not fairly and reasonably arise an inference of the actual malice necessary under the *True case* to destroy the privilege or immunity of the occasion of the "publication" of the alleged libel; or to make the communication of the charges, at the time and under the circumstances, a publication in the sense of the law of libel and slander. The last stated view—that there was no publication—is preferable under the authorities cited in the *Rodgers.v. Wise* and *Watson v. Wannamaker cases, supra.* Annotation, 166 A. L. R. 114.

Similarity of the facts at hand with those involved in the recent case of *Bell v. Bank of Abbeville,* 211 S. C. 167, 44 S. E. (2d) 328, 331, is seen from the following quotation from the opinion in it: "Reverting to the primary question whether there is in the record any credible testimony pointing to the fact that the occasion was used for the unlawful purpose of defaming and injuring the respondent, rather than to make a *bona fide* inquiry into complaints against the handling of the bank's affairs, we are unable to find in the record anything substantial upon which to support the burden which rested on the respondent to prove his case." The applicable principle of the law of libel and slander is the same, and requires the same result. Fitting here also is the following further quotation from the *Bell case*: "We again say in justice to the respondent (plaintiff) that we are adjudicating and insinuating nothing against him. We are merely seeking to determine whether in the actions of the directors of the bank, including the cashier (regarding them both singly and as a group), (here railway officials) there is any evidence of express malice on their part in communicating to the respondent in a secret meeting the complaints upon which they stated they were acting, and in requiring him to resign or discharging him."

The exceptions which assign error in refusal of appellants' motions for directed verdict and judgment *non obstante veredicto* in their favor are sustained, and the case is remanded for entry of judgment for the appellants.

Baker, C. J., and Fishburne, Taylor and Oxner, JJ., concur.