**Garnet L. KING, Plaintiff,**

v.

**Laura H. HILDEBRANDT, Defendant.**

United States District Court
S. D. New York.
April 11, 1963.

Abraham Kaufman, New York City, for plaintiff. I. William Stempil, Washington, D. C., of counsel.

Robert M. Morgenthau, U. S. Atty., for defendant. John F. X. Peloso, New York City, of counsel.

McLEAN, District Judge.

This is an action for libel. Jurisdiction is based on diversity of citizenship. The alleged libel consists of an affidavit made by defendant in the District of Columbia on March 25, 1960 and submitted by her to the Chief of Police of the District of Columbia as a basis for the arrest of plaintiff as a person of unsound mind. This was done as a preliminary to a lunacy proceeding instituted against plaintiff in the United States District Court for the District of Columbia.

Defendant moves for summary judgment on the ground that the affidavit was privileged. Plaintiff's opposing papers raise no issue as to any material fact. Briefly summarized, the facts are as follows:

Plaintiff, a nurse, was employed by the United States Government in the Public

Health Service in Washington, D. C. Defendant, at the time here involved, was employed by the Public Health Service as an educational psychologist.

At the request of the Public Health Service, plaintiff was examined by a psychiatrist in December 1959. His report, dated January 10, 1960, concluded that plaintiff was suffering from a paranoid condition. Upon receipt of this report, the Service commenced departmental proceedings to determine whether plaintiff's employment should be terminated. In March 1960 plaintiff asked defendant to represent her in forthcoming hearings before the Civil Service Commission on this subject.

Defendant saw plaintiff on some twenty occasions before March 25. Plaintiff explained to defendant at length her fears that people were trying to kill her, that persons unknown had damaged her personal possessions and had tried to poison her food. Defendant concluded that plaintiff was mentally disturbed and in urgent need of medical assistance.

Defendant was appointed one of a committee of three persons to hold a hearing to determine plaintiff's fitness for continued employment. At that hearing, the psychiatrist's report of January 10, 1960 was read. Thereafter defendant consulted another doctor who, after interviewing plaintiff, advised defendant that plaintiff was suffering from paranoid schizophrenia.

Defendant then communicated with plaintiff's sister, who lived in West Virginia. The sister came to Washington at defendant's request.

On March 25, 1960, defendant signed an affidavit, on a printed form furnished by the Police Department of the District of Columbia, in which she stated that she believed that plaintiff was incapable of managing her own affairs, that she was a fit subject for treatment in a mental hospital, and that it would be dangerous to permit her to remain at large. Plaintiff's sister and one George Maisel each signed an identical affidavit on the same date. On the same date two physicians each signed a certificate at-

testing to their opinion that plaintiff was suffering from paranoid schizophrenia. These documents are required by statute as a prerequisite to the arrest of a person alleged to be of unsound mind.

21 District of Columbia Code § 327

Plaintiff was arrested on March 26, 1960. Thereafter a police officer on March 28, 1960 filed in the United States District Court for the District of Columbia a petition seeking a writ to inquire into plaintiff's sanity. On March 28, 1960 the court, in accordance with the statute (21 District of Columbia Code § 311), ordered that the writ issue, that plaintiff be detained in a hospital for thirty days, and that the matter be referred to the Commission on Mental Health to investigate and report to the court. The court also appointed a guardian ad litem to represent plaintiff. On April 8, 1960 the Commission on Mental Health reported that it found plaintiff to be of unsound mind suffering from schizophrenic reaction, paranoid type and recommended that the court commit the plaintiff for treatment until she might safely be discharged. The guardian ad litem filed a written report concurring in the Commission's recommendation.

Thereafter in accordance with the statute (21 District of Columbia Code § 311), the case was set down for hearing. Before the hearing was held, the Commission on Mental Health reported to the court that it had made a further examination of plaintiff and that it had now concluded that she had recovered sufficiently to be entitled to a discharge. The court thereupon on April 25, 1960 dismissed the petition.

Plaintiff thereafter brought an action for libel in the United States District Court for the District of Columbia against this defendant and against George Maisel and Dr. Elton S. Osbourne. Defendant was not served in that action. Maisel and Osbourne moved for summary judgment. The court granted the motion by order entered on May 24, 1962. The court wrote no opinion, but the present moving papers al-

lege, without contradiction, that the motion was based upon a claim of absolute privilege.

■ This court applies the conflict of laws rule of the State of New York. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941).

■ The New York rule of conflicts is that the substantive law of the District of Columbia, where the alleged libel was committed, governs this case. Mattox v. News Syndicate Co., 176 F.2d 897, 12 A. L.R.2d 988 (2d Cir. 1949).

■ It is thoroughly settled in the District of Columbia that a defamatory statement, made in the course of a judicial proceeding, as long as it is relevant to the issues of that proceeding, is absolutely privileged. Young v. Young, 57 App.D.C. 157, 18 F.2d 807 (1927) Brown v. Shimabukuro, 73 App.D.C. 194, 118 F.2d 17 (1941).

The statements in the affidavit signed by defendant on March 25, 1960 were undoubtedly relevant to the issues of the lunacy proceeding. The question arises, however, as to whether that affidavit, filed as it was with the Police Department before the lunacy proceeding was formally commenced, can be said to be a statement in the course of that proceeding. No authority in the District of Columbia on this point has been cited by the parties or revealed by my own research. It would seem that since the District of Columbia statute requires such an affidavit before a lunacy proceeding can be begun, and requires it regardless of whether the allegedly insane person is arrested or not (21 District of Columbia Code §§ 311, 327), the privilege should apply to it as well as to any statement made after the petition for a lunacy writ has been filed. Obviously there are strong policy considerations in favor of affording persons who sign the required affidavit complete and unqualified protection against subsequent libel suits.

Some doubt arises, however, because of the provisions of 21 District of Columbia Code § 324 which make it a criminal offense to sign such an affidavit "without probable cause for believing such person to be insane or of unsound mind." It does not necessarily follow from this criminal statute that probable cause is necessary to sustain the privilege in a private action for libel. It has been held in the District of Columbia, however, that in an action for libel based upon statements contained in an affidavit made as a basis for causing the arrest of the plaintiff on a criminal charge, the privilege is a defense only if the affiant had probable cause. Slater v. Taylor, 31 App. D.C. 100, 18 L.R.A.,N.S., 77 (1908).

I will assume that were the precise question presented to the courts of the District of Columbia, they would hold that the rule is the same with respect to an affidavit made in order to secure the arrest of an allegedly insane person.

■■ On that assumption, it remains to consider whether probable cause existed in this case. The courts of the District of Columbia have stated flatly that where, as here, the evidentiary facts are not in dispute, the question of whether those facts constitute probable cause is a question of law to be decided by the court. Slater v. Taylor, supra (action for libel) Harper v. Strange, 81 U.S.App. D.C. 349, 158 F.2d 408 (1946) (action for false arrest) Wolter v. Safeway Stores, Inc., 80 U.S.App.D.C. 357, 153 F. 2d 641 (1946) (action for malicious prosecution).

As thus stated, the rule goes somewhat further than that announced by the New York courts in malicious prosecution cases, i. e., that the question of probable cause is for the jury "either when the circumstances upon which the answer depends are disputed or where conflicting inferences may fairly be drawn from them." Halsey v. New York Society, 234 N.Y. 1 at 3, 136 N.E. 219 (1922).

The difference between these two definitions of a "question of law" is unimportant in this case. Even if the New York formula is applied, with the result that a question of fact exists on an issue

of probable cause where reasonable men could draw different inferences from undisputed facts, I am satisfied that reasonable men could not differ on the inferences to be drawn from the evidence here. It is clear beyond question that defendant had probable cause for the statements of which plaintiff complains. Defendant's statements were therefore privileged and defendant is consequently entitled to judgment as a matter of law. Motion granted.

Plaintiff's request contained in her opposing affidavits that this court prohibit the United States Attorney from representing defendant is denied.