**In the Matter of Samuel W. KEARNEY, Assistant Cashier, First National City Bank, New York, New York, Respondent.**

United States District Court
S. D. New York.
Jan. 8, 1964.

Robert M. Morgenthau, U. S. Atty.,
Arthur S. Olick, Eugene R. Anderson,
Asst. U. S. Attys.

Shearman & Sterling, New York City,
for respondent; Herman E. Compter,
New York City, of counsel.

McLEAN, District Judge.

This is a motion for an order, pursuant to 26 U.S.C. § 7604, enforcing an Internal Revenue summons issued under 26 U.S.C. § 7602, directed to an officer of First National City Bank ("the Bank"). The circumstances are somewhat unusual. It appears from the affidavits, including a supplemental affidavit of an attorney for the Bank filed at the court's request, that the situation is substantially as follows:

In November 1962, Richmond County National Bank was merged into First National City Bank. Prior to the merger, Richmond County National Bank had made loans to a number of persons. including John Dalessio, Alexander Dalessio, Michael Dalessio and various associates of theirs and various corporations and businesses in which they had some interest. Prior to the merger, an audit of the affairs of Richmond County National Bank disclosed that there had been "widespread irregularities" in loans previously made by that bank. First National City Bank thereupon employed a firm of accountants to make an extensive investigation of the questioned transactions. The investigation included not only a detailed examination of the records of Richmond County National Bank and a reconstruction of such of those records as had been falsified, but also the interviewing of various persons who were thought to have some knowledge of the relevant facts. The Bank's counsel conferred with the accountants in the course of their work, a labor which consumed many months.

In August 1963, the accountants submitted to the Bank a comprehensive written report. The Bank's counsel collaborated in drafting parts of it. At my request this document was submitted to me for examination. It includes a section entitled "Loans to the Dalessios and their Business Enterprises." It describes at length the dealings between the Dalessios and their various corporations and associates with Richmond County National Bank. It sets forth information acquired in a number of interviews held by the investigators with some of the Dalessios and with other persons. The report is supplemented by comprehensive financial schedules giving details of the history and current status of each of the many loans in question.

One copy of this report was delivered by the accountants to the Bank's counsel and four copies were delivered to the Bank. Of the latter, three were forwarded by the Bank to certain surety companies in support of the Bank's claim against these surety companies upon fidelity bonds. The accumulation of this data was an expensive operation and is said to have cost the Bank approximately $60,000, exclusive of attorneys' fees.

According to the affidavit of the Bank's attorney, the purpose of this investigation was "to determine the amount of the fidelity losses for which it [the Bank] might be entitled to reimbursement from its insurers; and to enable the Bank and the underwriters to determine the nature and extent of the liability of third persons for those losses."

In September 1963, the Internal Revenue Service was conducting an investigation into the potential tax liability of John Dalessio, an investigation which also embraced the potential tax liability of Alexander and Michael Dalessio, for the years 1958 through 1962. Pursuant to 26 U.S.C. § 7602, an Internal Revenue summons was served upon the Bank in September 1963 requiring the production of records of loans made by Richmond County National Bank "involving John Dalessio, Alexander Dalessio, and Michael Dalessio" for the years in question. Pur-

suant to this summons, the Bank produced Richmond County National Bank's records of loans. Although it is not entirely clear from the affidavits, I understand that the records so produced included those pertaining not only to loans made directly to the three Dalessios, but also to loans made to their associates and affiliated enterprises. In the course of his examination, the Revenue Agent learned of the existence of the accountant's report. The Bank refused to produce it upon his request. Thereafter, the summons involved on this motion was served. It is dated October 21, 1963 and requires the production of:

"(1) Reports, workpapers, memoranda of interviews, investigative memoranda, including supporting documents, prepared by the accounting firm of Berman & Jackson and/or employees of the First National City Bank in connection with loans made by the Richmond County National Bank, 1910 Victory Blvd., Staten Island, New York, to John Dalessio, Alexander Dalessio and Michael Dalessio, during the years 1958 through 1962.

"(2) Related Insurance Claim and supporting documents other than included in (1), above."

The affidavit of the Revenue Agent in support of the motion states that although he has examined the original loan records of Richmond County National Bank, "which were segregated as relating to the Dalessios," it is necessary to see the documents covered by the present summons because without them "the relationships determined by the investigation of the Bank could not be corroborated."

Respondent opposes this motion on the ground that the report is privileged. I am satisfied that it is not covered by the usual privilege of attorney and client. The document is not a confidential communication from the Bank to its counsel for the purpose of securing legal advice, nor does it, as far as I can see, contain any legal advice from the

counsel to the Bank. It is a report of a factual investigation.

Respondent contends, however, that the document constitutes an attorney's "work product" and hence that its production is prevented (1) by Section 3101 of the New York Civil Practice Law and Rules, and (2) by the doctrine of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ The first argument can be disposed of quickly. State statutes are irrelevant, inasmuch as the question of privilege in a federal income tax investigation is to be determined by federal law. Colton v. United States, 306 F.2d 633 (2d Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963).

Respondent's second contention squarely raises the question which the Court of Appeals in Colton v. United States, supra, expressly left open, i. e., whether the "work product rule" of Hickman v. Taylor, supra, is applicable to investigations conducted by the Internal Revenue Service. No decision squarely in point on this question has been found.

It is clear that the document which the government seeks is in part, at least, the product of an attorney's work, and that it was prepared "in anticipation of litigation" in the sense that it was prepared to support a claim by the Bank against its insurers and against possible wrongdoers, claims which might conceivably require litigation to determine them. It does not seem to me, however, that this is the sort of anticipation of litigation which was contemplated by Hickman v. Taylor. That case was concerned with setting limits to the discovery allowed under the Rules of Civil Procedure in an ordinary civil action. The court held that in the absence of a showing of good cause, one party to a law suit may not require his adversary to produce the results of his attorney's work in preparing the case, work which was carried out

either after the action was begun or when it was in contemplation. Here, there is no litigation between the Internal Revenue Service and the Bank, and no controversy between them, apart from that raised by the present motion. The Internal Revenue Service is investigating the Dalessios, not the Bank, and the Bank's report was prepared, not for use against the Internal Revenue Service, but for possible use in a wholly different litigation. To hold that the Internal Revenue Service may not properly require the production of documents merely because they were prepared by attorneys for possible use in some anticipated controversy with wholly different parties, would be to go far beyond what was decided in Hickman v. Taylor and would restrict the investigative powers of the Internal Revenue Service in a fashion which would be at variance with the purpose of the statute under which those investigations are carried on.

26 U.S.C. § 7602 provides that for the purpose of determining the tax liability of any person, the Secretary or his delegate is authorized to examine any books and records which "may be relevant or material to such inquiry." He may summon not only the person liable for the tax, but "any other person the Secretary or his delegate may deem proper," and he may require such person to produce such books and records "as may be relevant or material to such inquiry." Thus, the only statutory test is one of relevance. Respondent does not contend that the documents which are sought on this motion are not relevant to the government's inquiry into the tax affairs of the Dalessio family. The accountant's report is manifestly relevant, because of the light which it casts upon the relationship between the Dalessios and various other individuals and enterprises.*

■ It is true that, even though the statute does not say so, documents cov-

---

* With respect to the second item in the summons, "Related Insurance Claim and supporting documents other than included in (1) above," there would seem to be no such documents as far as appears from the affidavits. In any case, none has been submitted to me for my examination.

178

ered by the attorney-client privilege need not be produced. See Colton v. United States, supra.

But the fact that the statute is so qualified affords no reason for qualifying it still further by reading into it another limitation (which, strictly speaking, is not a privilege at all), which was created by Hickman v. Taylor for an entirely different purpose.

The Bank complains that to require it to produce the report would give the government the benefit, free of charge, of information which it has cost the Bank a substantial sum to acquire. This is true, but I see nothing in that fact which would justify the court in denying the government access to information which is relevant to its inquiry and which may be of assistance to it in enforcing the tax laws of the United States.

Finally, the bank argues that production of the report would be a "publication" of its contents which might subject it to libel actions by persons mentioned in the report.

The Bank has cited no authority in support of this contention. An absolute privilege extends to the testimony of witnesses in a judicial proceeding, whether the witness testifies voluntarily or as a result of process. Restatement, Torts § 588 (1938); Zirn v. Cullom, 187 Misc. 241, 63 N.Y.S.2d 439 (Sup.Ct.N.Y. Co. 1946); Ellish v. Goldman, 117 N.Y.S. 2d 867 (Sup.Ct.Rockland Co. 1952).

It would seem that the same privilege should extend to the production of documents by court order.

I hold that the rule of Hickman v. Taylor does not apply to this situation and that the Bank has shown no adequate reason for non-compliance with the summons. The motion is therefore granted. The order shall provide for the production of those portions of the accountant's report and accompanying schedules which relate to the subject matter of Item 1 of the summons. As to Item 2, the order shall also provide for the pro-

duction of any documents which relate to that subject matter, but if, as appears to be the case, there are no such documents, the Bank may so state under oath in lieu of production.

Settle order on notice.

