Samuel J. CORBIN, Plaintiff,

v.

WASHINGTON FIRE AND MARINE INSURANCE COMPANY, Midwestern Fire and Marine Insurance Company, St. Louis Fire and Marine Insurance Company, and the Insurance Company of St. Louis, Defendants.

No. CA/66–868.

United States District Court
D. South Carolina,
Charleston Division.

Jan. 19, 1968.

Morris D. Rosen, G. M. Howe, Jr., Charleston, S. C., for plaintiff.

William H. Grimball, Jr., Grimball & Cabaniss, Charleston, S. C., for defendants.

## OPINION AND ORDER

DONALD RUSSELL, District Judge.

This action arises out of an arbitration proceeding had between two insurance groups.[1] The arbitration involved a claim of liability for failure properly to protect the subrogation rights of the defendants-insurers in the settlement effected by the other insurance group in connection with an automobile accident in which both insurance groups, through their assureds, were concerned. In the disputed settlement, the insurance group charged with failure to protect properly the other group's subrogation right was represented by the plaintiff as attorney and adjuster. It was as a result of plaintiff's conduct in that capacity that the defendants claimed their right of subrogation had been violated, thereby giving them a right of recovery against the plaintiff's clients. Both insurance groups were parties to an agreement binding them to submit all such claims and disputes between them to arbitration. Pursuant to that agreement, this controversy between the two insurance groups was submitted to a board of arbitrators. Both parties to the arbitration submitted their statement of facts and argument in the form of letters to the board of arbitrators. In their statement so submitted, the defendants, under the signature of E. C. Heard, as their representative, wrote, among other things:

"* * * We particularly call your attention to paragraph four that it was

---

1. While the complaint refers to four insurance companies as parties defendant throughout, one of the defendants was never properly served and an order of dismissal of such defendant has been entered. Accordingly, there are only three real defendants in the present posture of the case.

stated that negotiations were made in good faith by the attorney for Sandra Simmons and settlement was made July 2, 1964, and a release and draft was furnished that date which is a falsehood. As you know, it is a legal maxim, that false in one thing false in all things.

\* \* \* \* \* \*

"We had made our payment July 7, 1964, for $1118.93 and Samuel J. Corbin was attempting to push their settlement ahead to July 2, 1964, as we have letter from respondent dated February 10, 1965, admitting that settlement was not made until July 18, 1964."

The plaintiff has sued the defendants in libel, asserting that the quoted language defamed the plaintiff in his character as an attorney and adjuster. The defendants have plead in answer privilege, absolute and qualified. Discovery has been had between the parties; and there is little dispute about the facts. The publication is established and the circumstances of the arbitration are not in controversy.

The plaintiff and the defendants have both filed motions for summary judgment. The plaintiff's motion for partial summary judgment seeks an interlocutory determination that the language charged is libelous *per se* and is not privileged, thus leaving for resolution by a jury solely the quantum of damages.[2] The defendants, on the other hand, base their motion for summary judgment upon their claim of privilege.

That the language used is actionable was not argued in earnest. The controversy between the parties, as posed by the arguments on their respective motions for summary judgment, centered on the privilege which attached to the presentation of testimony and argument before a board of arbitrators. The defendants argue that the privilege is absolute; the plaintiff, on the contrary, contends the privilege is merely qualified or conditional and that, in this case, such qualified privilege, as a matter of law, has been lost by reason of "excessive defamation", importing malice.

There is no South Carolina decision on the specific point presented by the motions herein. The issue must accordingly be resolved by the general principles which authorize privilege under the law of South Carolina and by such persuasive authority as other jurisdictions may supply.

Privilege in libel or slander is founded on sound considerations of public policy.[3] It is horn-book law that such privilege falls into two categories, i. e., absolute privilege and qualified privilege.[4] While there has been some tendency in the decisions to narrow the absolute privilege, restricting it generally "to legislative and judicial proceedings and acts of state",[5] the Courts of South Carolina have recognized "occasions other than those comprising strictly legislative or judicial proceedings", where, under considerations of public policy, absolute

---

**2.** Such motion for partial summary judgment under Rule 56(c), which in a proper case may expedite the trial and disposition of a cause, is exhaustively discussed in Section 1241, Vol. 3, Barron & Holtzoff, Federal Practice and Procedure.

**3.** Barr v. Matteo (1959) 360 U.S. 564, 571–572, 79 S.Ct. 1335, 3 L.Ed.2d 1434, rehearing den. 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 93; Johnson v. Independent Life & Accident Ins. Co. (D.C.S.C.1951) 94 F.Supp. 959, 962; Oliveros v. Henderson (1920) 116 S.C. 77, 84, 106 S.E. 855.

**4.** Bell v. Bank of Abbeville (1946) 208 S.C. 490, 493, 38 S.E.2d 641, 642: "Privileged communications or publications are of two kinds: 1. Absolute; 2. Conditional or qualified. When the communication is absolutely privileged, no action will lie for its publication, no matter what the circumstances under which it is published. When qualified, however, the plaintiff may recover if he shows that it was actuated by malice."

**5.** Fulton v. Atlantic Coast Line R. Co. (1951) 220 S.C. 287, 296, 67 S.E.2d 425.

privilege has been unheld.[6]  After stating that, "South Carolina has applied the doctrine of absolute privilege to several occasions other than those comprising strictly legislative or judicial proceedings", Judge Wyche in Johnson v. Independent Life & Accident Ins. Co. (D.C. S.C.1951) 94 F.Supp. 959, 962, reviews in detail the several cases, extending over a period of a century and a half, in which, absent a legislative or judicial occasion, an absolute privilege was extended to publications, i. e., Carver v. Morrow (1948) 213 S.C. 199, 48 S.E.2d 814 (suit against executor personally and as fiduciary for alleged defamation in will filed);  State v. Drake (1922) 122 S.C. 350, 115 S.E. 297 (defamation in letter answering charges made before a fraternal organization);  Rodgers v. Wise (1940) 193 S.C. 5, 7 S.E.2d 517 (alleged defamation in letter between counsel in litigation);  Reid v. Delorme (1806) 2 Brev. 76 (alleged defamation in petition submitted to the General Assembly.)[7] After such review, Judge Wyche upheld a plea of absolute privilege for publications made to the insurance commission by the district manager of defendant-insurer with reference to the qualifications and conduct of plaintiff as an insurance agent.[8]

█ .It is thus clear that unqualified privilege does not depend on the rigid requirement of a strictly legislative or judicial proceeding; its limits are fixed rather by considerations of public policy. The question herein thus resolves itself into whether an arbitration presents a situation where public policy will uphold an unqualified immunity for its essential proceedings.  To a large degree, this question turns on the judicial attitude to arbitration as an instrument for the settlement of controversies.

█ The arbitration of controversies, it has been repeatedly stated in the decisions and evidenced in both state and federal statutes, is favored in law.[9]  It is regarded as quasi-judicial in character and function.[10]  Arbitration, even as any judicial hearing, cannot proceed without evidence and the right of the parties to present argument; it cannot operate in a vacuum.  It accordingly contemplates and normally requires the receipt of evidence,[11] though not bound strictly in its

---

6.  7 S.C.Law Q., 647 (1955).

7.  See, also, Boston Mutual Life Insurance Company v. Varone (C.C.A.1 1962) 303 F.2d 155, p. 158, in which the Court said: "The circumstance that the defendant's statement was not made in a court of law does not preclude the assertion of this (absolute) privilege."

8.  See, Goforth v. Avemco Life Insurance Co. of Silver Spring, Md. (C.C.A.4 1966) 368 F.2d 25, 31, decided under North Carolina law, which, while holding the statements made under similar circumstances "qualifiedly privileged", sustained the direction of verdict in favor of defendant.

9.  9 U.S.C.A. secs. 3 and 4; Section 10-1901 et seq., Code of Laws of South Carolina (1962); Section 1, Article VI, Constitution of South Carolina; Bishop v. Valley Falls Manufacturing Co. (1907) 78 S.C. 312, 315, 58 S.E. 939; Necchi v. Necchi Sewing Machine Sales Corp. (C. C.A.2 1965) 348 F.2d 693, 696, cert. den. 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664; Hughes v. National Fuel Co. (1939) 121 W.Va. 392, 3 S.E.2d 621, 624. In the Bishop Case, supra, Mr. Justice Woods said (78 S.C. p. 315, 58 S.E. p. 939): "In early times the disposition of the courts was to look with jealousy on arbitrations, and give them as little force as possible, but later and more intelligent judicial sentiment is strongly in their favor."

10.  5 Am.Juris. 2d, sec. 110, p. 602; 6 C.J.S. Arbitration and Award § 1, p. 153. In the early case of Mulder v. Cravat (1802) 2 Bay 370, 372, the Court described arbitrators as "judges, jurors and chancellors in the case," and added that they "possess all the powers which come within the province, or compass of these respective functionaries".  See, also, Burchell v. Marsh et al. (1854) 17 How. 344, 349, 58 U.S. 344, 349, 15 L.Ed. 96: "Arbitrators are judges chosen by the parties to decide the matters submitted to them * * *."

11.  Bollmann v. Bollmann (1875) 6 S.C. 29, 44–45;  Askew v. Kennedy (1828) 1 Bailey, 46, 49;  Mulder v. Cravat (1802) 2 Bay 370, 372.

reception to the rules of evidence.[12] A denial of immunity to one offering such evidence or argument would make it difficult, if not impossible, in many cases for the arbitrators to secure the necessary evidence on which to proceed; it would be a severe limitation on the utility of arbitration in resolving controversies and would thwart that public policy which encourages arbitration. Freedom to develop a relevant record and to present pertinent arguments, without fear of reprisal by way of threatened libel or slander actions, is a necessary prerequisite to the fair resolution of any controversy through arbitration.

The Courts have recognized and upheld this need to accord unqualified privilege to arbitration proceedings under principles of public policy. Thus, it seems well established that the Courts will extend the cloak of absolute immunity around the acts of the arbitrators themselves. In Hill v. Aro Corporation (D.C. Ohio 1967) 263 F.Supp. 324, the Court, after an exhaustive and scholarly review of the pertinent cases, states the rule (p. 326):

> "If national policy encourages arbitration and if arbitrators are indispensable agencies in the furtherance of that policy, then it follows that the common law rule protecting arbitrators from suit ought not only to be affirmed, but, if need be, expanded. The immunity rule was sound when announced by two state supreme courts over eighty years ago; it is still sound today."

Again, in Cahn v. International Ladies' Garment Union (C.C.A. 3 1962) 311 F.2d 113, 114–115, the Court phrased the same rule in these words:

> "We agree with the district court that the allegations of the said paragraphs are based upon the conduct of the ap-

pellee in his capacity as arbitrator; that in so functioning he was performing quasi-judicial duties and was ' * * clothed with an immunity, analogous to judicial immunity, against actions brought by either of the parties arising out of his performance of his * * * duties.' "

This same rule lies at the heart of the decision in General Motors Corporation v. Mendicki (C.C.A. 10 1966) 367 F.2d 66, 70–71, which, though perhaps not strictly in point, gives cogent support to the argument for absolute privilege. Under a collective bargaining agreement, the parties set up machinery for disposing of controversies growing out of the agreement. Such procedure contemplated bargaining sessions between the parties and, if such did not resolve the controversy, the submission of the same to arbitration. This particular dispute had not proceeded beyond the collective bargaining process; actually it never got to arbitration. But, during one of such bargaining sessions, the representative of the defendant-employer made a defamatory statement about the plaintiff, who thereupon brought an action in slander. In denying the plaintiff a right of action and in sustaining a plea of absolute privilege, the Court said (p. 71):

> "If the representatives of either employer or employee were subject to an action for damages because of statements made of what they claimed to be the pertinent facts respecting a controversy under consideration and of their position respecting such matter and the reasons therefor, at a conference or collective bargaining session being held to adjust such controversy, the likelihood of the attainment of peaceful adjustments or disposition of the issues involved between them through the conference or bargaining processes would be greatly decreased." [13]

---

12. Bollmann v. Bollmann, supra; Petroleum Separating Co. v. Interamerican Refining Corp. (C.C.A.2 1961) 296 F.2d 124; Harvey Aluminum, Inc. v. United Steelworkers of America (D.C.Cal.1967) 263 F.Supp. 488, 490. In Mulder v. Cravat, supra (2 Bay p. 372) the Court said

that, in agreeing to arbitration, the parties "consent(s) that his (their) case shall be no longer bound by the rigid rules of law and evidence * * *."

13. See 15 Kan.L.Rev. 553 (1967) for a discussion of this case.

The plaintiff seemingly recognizes that an absolute immunity attaches to the acts of the arbitrators but urges that this represents the limits of absolute privilege in arbitration proceedings. If, however, arbitration is to be safely utilized as an effective means of resolving controversy, the absolute immunity attaching to its proceedings must extend beyond the arbitrators themselves; it must extend to all "indispensable" proceedings, such as the receipt of evidence and argument thereon. To urge that the immunity should be limited to the arbitrators would be similar to arguing that judicial immunity should go no farther than the judge. The absolute privilege attaching to judicial proceedings embraces communications between counsel (Rodgers v. Wise, supra), statements made by counsel to a prospective witness (Johnston v. Cartwright (C.C.A. 8 1966) 355 F.2d 32, 37; Section 587, Restatement of the Law of Torts) arguments or statements by counsel in course of proceeding (Wojcinski v. Foley (D.C. N.Y.1963) 226 F.Supp. 157, 160, aff. 2 Cir., 327 F.2d 665; Section 586, Restatement of the Law of Torts), any statements made by witnesses in the course of the proceedings (Gilpin v. Tack (D.C. Ark.1966) 256 F.Supp. 562, 566; In Re Kearney (D.C.N.Y.1964) 227 F.Supp. 174, 178) and even statements in the course of negotiation of a settlement (Petty v. General Accident Fire & Life Assurance Corp. (C.C.A. 3 1966) 365 F. 2d 419, 421). As summarized in King v. Hildebrandt (D.C.N.Y.1963) 216 F.Supp. 814, 816, aff. 2 Cir., 331 F.2d 476, "a defamatory statement, made in the course of a judicial proceeding, as long as it is relevant to the issues of that proceeding, is absolutely privileged." Pertinency of the statement is a question of law for the Court. McKesson & Robbins, Inc. v. Newsome (1944) 206 S.C. 269, 275, 33 S.E.2d 585; Wojcinski v. Foley (D.C. N.Y.1963) 226 F.Supp. 157, 160, aff. 2 Cir., 327 F.2d 665.[14] The reason for such principle of immunity was well phrased in the Petty Case, supra, 365 F.2d at p. 421:

> "This rule reflects the prevailing common law view that the public interest in freedom of expression by participants in judicial proceedings, uninhibited by any risk of resultant suits for defamation, outweighs the interest of the individual in the protection of his reputation from defamatory impairment in the judicial forum."

These same reasons apply with equal force to an arbitration proceeding. If the parties cannot argue their cause or offer testimony before the arbitrators without threat of harassment via libel actions, arbitration becomes a farce and the many expressions of judicial and legislative encouragement of arbitration a snare.

It is suggested by able counsel for the plaintiff, however, that this was not a statutory arbitration but one arising out of the private agreement of the parties.[15] This is unimportant. In the *Cahn* Case, supra, the District Court disposed of this point in these words (203 F.Supp. 191, at p. 194):

> "The fact that this arbitrator was not court-appointed is not controlling. If one is appointed by agreement of parties to act as arbitrator and is empowered to resolve disputes between them, he is, in so acting, performing a 'quasi-judicial' function and is clothed with an immunity, analogous to judi-

14. In Wojcinski v. Foley, supra (226 F. Supp. at p. 160): "The question of the absolute privilege of statements made by counsel in the course of a litigation is well defined and recognized in New York law. It gives the right to those taking part in judicial proceedings to speak or write freely as to the subject matter of the litigation providing that the spoken or written word is pertinent thereto. Per-

tinency is a matter of law to be resolved by the court. There is no room in such matters for any strict or narrow test'. (quoting cases) * * * 'The privilege embraces anything that may possibly be pertinent.'"

15. Compare Bishop v. Valley Falls Manufacturing Co., supra, wherein the Court fixes the principles whereby an arbitration is determined as statutory or private.

cial immunity, against actions brought by either of the parties arising out of the performance of his duties."

The contention is also pressed that the right of absolute privilege does not extend to "proceedings where the hand of the sovereign is not present to control and supervise." This contention is predicated upon the statement in 33 Am.Juris. (1967 Cumulative Supplement), p. 28:

> " * * * And it has been said that absolute immunity should be confined to cases where there is supervision and control by other authorities, such as the judge in judicial proceedings and the presiding officer in legislative proceedings."

It was, also, obliquely referred to in the Petty Case, supra (365 F.2d p. 421) where, in justifying the immunity attaching to judicial proceedings, the Court suggested that " * * * a judicial proceeding afford(s) some protection against the risk of defamation * * *." But it is clear that the immunity has not been so narrowly construed. There is no restraining hand of "the sovereign" present when counsel corresponds with his associate counsel (Rodgers v. Wise, supra), when the defamation occurs during negotiations for settlement (Petty v. General Accident Fire & Life Assurance Corp., supra) or when counsel is interviewing a prospective witness (Johnston v. Cartwright, supra). There was no judicial restraint available in the *Drake* Case, supra, or in the *Johnson* Case, supra.

Of course, the defamatory statement must be relevant to the arbitration issues. But, by analogy to the immunity accorded judicial proceedings, "all doubts" are to be "resolved in favor of relevancy", which is a matter, as pointed out earlier, "for the determination of the Court and not a jury". McKesson & Robbins, Inc. v. Newsome (1945) 206 S.C. 269, 275, 33 S.E.2d 585; Texas Co. v. C. W. Brewer & Co., 180 S.C. 325, 327–328, 185 S.E. 623. The proceeding herein

presented largely a question of credibility. The argument submitted, which forms the basis for plaintiff's action, was addressed to such question. We are not concerned with the strength of the argument, only its pertinency. The plaintiff, however, suggests that the defendants' agent went beyond pertinent argument by resort to the old maxim, "false in one thing, false in all things". This is a maxim that has been criticized when included in the Court's charge. Virginian Ry. Co. v. Armentrout (C.C.A. 4 1948) 166 F.2d 400, 405–406, 4 A.L.R.2d 1064. It is, however, often used in argument, both before jury and court and even by the Court itself, in weighing the credibility of witnesses. James v. Mickey (1886) 26 S.C. 270, 275, 2 S.E. 130; Evans v. United States (D.C.Va.1946) 65 F.Supp. 183, 188, aff. 329 U.S. 668, 67 S. Ct. 78, 91 L.Ed. 590; Norfolk & W. Ry. Co. v. McKenzie (C.C.A. 6 1941) 116 F.2d 632, 635. While the weight to be accorded it in the proceeding may be a matter for argument between the parties, the maxim was not irrelevant to the issues before the arbitrators and its use by the defendants will not destroy the privilege herein.

It may not be amiss to remark finally that, even were the defendants confined to their plea of qualified privilege, the result might well be the same. See, Porter v. Eyster (C.C.A. 4 1961) 294 F.2d 613, 618–619. The elements of qualified privilege are set forth authoritatively in Conwell v. Spur Oil Co. of Western S. C. (1962) 240 S.C. 170, 178–179, 125 S.E.2d 270. The plaintiff seemingly concedes that the publication in question was qualifiedly privileged. It is his contention, however, that the publication exceeded the privilege and that from such excessive publication, a malicious intent is to be inferred. It is, of course, settled that qualified privilege may be lost by "unnecessary defamation",[16] by a defamatory statement which goes "beyond the legitimate scope of the enquiry",[17]

---

16. Conwell v. Spur Oil Co. of Western S. C., supra, at p. 179, 125 S.E.2d 270.

17. True v. Southern Railway Co. (1931) 159 S.C. 454, 462–463, 157 S.E. 618, 620;

Anderson v. Southern Ry. Co. (1953) 224 S.C. 65, 73–74, 77 S.E.2d 350.

"beyond the requirement of the occasion,[18] or "with the design to causelessly and wantonly injure the plaintiff".[19] As the Court said in the Callum Case (228 S. C. p. 389, 90 S.E.2d p. 372), just cited,

> "Since qualified privilege arises by reason of the occasion of the communication, a communication which goes beyond the requirement of the occasion loses the protection of the privilege, for it lacks the requisite element of good faith."

Plaintiff's charge of excess defamation rests upon the inclusion of the legal maxim, "false in one thing, false in all", in defendants' statement of their position to the arbitrators. As already observed, the addition of a legal maxim, which is a commonplace in the legal vocabulary, used repeatedly where there is any conflict in a witness' testimony, was not, however, beyond the "scope of the inquiry" before the arbitrators and did not go "beyond the requirement of the occasion". It actually touched the only real issue in the controversy and that was the knowledge and conduct of the plaintiff himself during the settlement which, under defendants' claim, improperly deprived them of their right of subrogation. The credibility of the plaintiff was clearly involved. The fact that the arbitrators ultimately resolved such question in plaintiff's favor cannot affect the relevancy of the issue of credibility or operate retroactively to deny the defendants the right to state their contention on that issue. The statement of the defendants, on which plaintiff rests his claim of abuse of privilege, was not "causeless" or irrelevant.

Accordingly, on the record here, the result might well be the same, whether the privilege of the defendants be deemed absolute or qualified. Since, however, the principle of absolute immunity is, in my opinion, essential to the maintenance of arbitration as an effective instrument for the settlement of controversies, I have chosen to base my decision on absolute, rather than qualified, privilege.

Defendants' motion for summary judgment is accordingly granted, and

It is so ordered.

---

18. Cullum v. Dun & Bradstreet, Inc. (1955) 228 S.C. 384, 389, 90 S.E.2d 370, 372.

19. Bell v. Bank of Abbeville (1947) 211 S.C. 167, 176, 44 S.E.2d 328, 331.