17901

George W. CONWELL, Respondent, v. SPUR OIL COMPANY OF WESTERN SOUTH CAROLINA, Appellant

(125 S. E. (2d) 270)

*Messrs. Grantham & Robinson,* of Easley, and *Wyche, Burgess & Wyche,* of Greenville, *for Appellant,*

*Messrs. Bolt & Bowen,* of Greenville, *for Respondent,*

April 23, 1962.

Moss, Justice.

George W. Conwell, the respondent herein, brought this action against Spur Oil Company of Western South Carolina, the appellant herein, for damages for alleged libel in the publication of a form letter, the envelope which contained such letter being addressed to Spur Oil Company, Station No. 219, 619 S. Main Street, Greenville, South Carolina, the letter being addressed to the respondent as station manager at the time of the writing and receipt of said letter.

The letter in question, dated September 24, 1959, was from B. C. Knestrick, secretary of the appellant, and was directed to George Conwell, the respondent, as manager of Station No. 219, the subject of the letter being "Premium Cash Not Entered on Daily Report." The letter in question was as follows:

"Dear Sir:

"Premium cash on the following issue receipts was not entered on Daily Report:

| "Date | Item | Customer | Cash |
|---|---|---|---|
| 8/16/59 | 1 Farm Truck & Trailer | Howell Hunter | $1.75 |
| 8/31/59 | 1 Alarm Clock | Judy Shaffer .. | 1.49 |
| 8/16/59 | 1 pair Hose | H. L. Gilbert .. | .74 |
| 9/ 8/59 | 1 Steak Knife Set | John M. Ballew | 1.70 |

"You have been charged for the total cash ($5.68) listed above and this amount will be deducted from your next pay."

The respondent asserted by allegation and testimony that there was enclosed with said letter a blue slip headed "Employee's Accounts Receivable", reading as follows:

"Name George Conwell

"Date   9/24/59       Ref. Ja 9-24        Sta. No. 219

"Item    Short cash on issue of:        Charge $ 5.68
   1 Farm Truck & Trailer 8/16/59
   1 Alarm Clock 8/31/59            Credit $.....
   1 pr. Hose 8/16/59
   1 Steak Knife Set 9/8/59         Posted $...."

The complaint alleges that a copy of the aforesaid letter and blue slip was sent to Clarence White, district manager of the appellant; that the envelope containing the said letter and blue slip sent to Station 219, in Greenville, South Carolina, was opened and read by one James W. Watkins, assistant manager of the station, and was also read by one G. E. Owens, an employee at said station. It was further alleged that the appellant knew, or should have known, that said letter would likely be opened and read by others than the respondent. The complaint further alleges that the appellant intended and it was so understood by Watkins, Owens and the district manager that the respondent had sold merchandise and failed to account for it to the appellant and had committed the criminal offense of breach of trust, although the respondent could not have been guilty of such as he was not in charge of said station at said time.

The answer of the appellant admitted that it was a South Carolina corporation engaged in the retail sale of gasoline,

oil and motor vehicle accessories, with offices and agents in Greenville County, South Carolina.

It denied that it had written any letter or memorandum wherein the respondent was charged with the criminal offense of breach of trust or in any way with misappropriation of funds. Further answering, it alleged that the letter of September 24, 1959, was written and mailed to the respondent, as station manager of the appellant, in the regular course of business and was a privileged and qualifiedly privileged communication.

This case was tried before the Honorable Steve C. Griffith, and a jury, at the 1961 term of the Court of Common Pleas for Greenville County and resulted in a verdict in favor of the respondent for actual damages.

The appellant made timely motions for a nonsuit and directed verdict upon the grounds (1) that the only reasonable inference to be drawn from the testimony is that the words charged against the appellant are not libelous; (2) that the only reasonable inference to be drawn from the testimony is that there was no publication by the appellant of the alleged libelous statement; (3) that any publication of the alleged libelous statement and any damage resulting from such publication was the result of the acts of the respondent, or his authorized agents; (4) that the only reasonable inference to be drawn from the testimony is that the letter and statement referred to in the complaint were qualifiedly privileged; and (5) that there was no evidence of malice on the part of the appellant in sending the letter and statement. After an adverse judgment, the appellant moved for judgment *non obstante veredicto* and, in the alternative, for a new trial upon the same grounds as were included in the motions for a nonsuit and directed verdict. All of the motions were refused and this appeal followed.

It appears from the testimony that the respondent was first employed by the appellant in September, 1957, as assistant manager of its Rutherford Street station in Green-

ville. After working there for a short period of time, he was transferred to Easley as station manager. Thereafter, he was transferred to Station No. 219, South Main Street, Greenville, where he was manager from December 1, 1958 until May 16, 1959, when he had to leave on account of illness. H. L. Gilbert was assistant manager of this station at the time when the respondent had to leave on account of illness and he took over as temporary manager. The respondent returned to appellant's Station No. 219 on August 31, 1959, and was checked back in as station manager on September 8, 1959, and at the same time James W. Watkins was made assistant manager in place of H. L. Gilbert. The respondent continued to work as station manager until October 2, 1959, when he voluntarily resigned because he felt that he was not responsible for the $5.68 which had been deducted from his pay.

It appears from the testimony that the appellant, in an effort to promote sales, gives what is called premium coupons, one coupon being given for every gallon of gas or quart of oil purchased. These conpons could be used in purchasing merchandise which the appellant kept on display at its gas stations. Each coupon was worth a penny. If a customer did not have enough coupons to purchase a desired article, he could make out the difference by paying cash. Employees were permitted to purchase merchandise for cash without the necessity of using coupons.

Where a premium item is purchased with coupons, or with coupons and cash, the salesman counts the coupons and enters the transaction showing the number of coupons on a form, in triplicate, called "Premium Issue Receipt". Each copy of this form has the date, station number, customer's name and address and the corresponding daily report number. The first copy of this triplicate form is kept at the station until an audit is made. The second copy is in the form of an envelope in which is placed the counted coupons and is mailed, along with the daily report, to the home office. The third copy is for the customer. If some cash is used

along with the coupons to purchase a premium item, the cash paid is entered in the appropriate space therefor. Each triplicate set of receipts shows one transaction only. In addition to entering the cash paid on the "Premium Issue Receipt", the total amount of "cash collected on premium issues" in any one day is also entered on the station manager's daily report. This daily report, with the premium issue receipt, which includes the coupons, is mailed to the home office of the appellant.

The station manager also makes out a weekly report entitled "Station Time Report". This report is sent in on Friday of each week. It shows the employee's name, position, days worked, wages, the amount of deductions which include social security, federal income tax, insurance, payment on accounts, and a column of "over or short". The deductions are figured in the home office of the appellant and the report is returned to the station manager to be followed in payment of wages. At the foot of this form the manager signs a certificate by which he certifies it to be correct and that he has paid the total shown to the employees indicated for the period stated. Each month a complete audit of the station is made by the district manager with the help of the station manager. This audit shows, among other things, the quantity of each premium item on hand at the station on that day. An audit of Station No. 219 was made for the period August 10, 1959 to September 9, 1959. If a difference appears from an analysis of the audit against the coupons and the cash, the auditor makes a memorandum of the discrepancy and turns such over to the Premium Accounting Department so that this department, in preparing the station payroll, may enter the proper deductions on the station time report before it is sent back to the station manager. The audit above referred to revealed that the premium cash on the four items mentioned in the letter of September 24, 1959, was not entered on the daily report.

A manager of a gasoline service station for the appellant is responsible to the company for all transactions involving

such. He is responsible for seeing that all transactions are properly reported; that all reports are promptly and accurately made out, and that the cash received in the operation of the station is deposited in the bank and accounted for. His daily report should properly and accurately show the redemption of all premium items by coupons alone or by coupons and cash.

The evidence shows that the service station accounts for this particular station, as well as other stations, were on occasions out of balance. When this situation exists, the appellant uses a form designated as "over & short report" upon which is recorded items which are "short" and items "over". This form of accounting is used to correct errors, disclosed by the audit, either by a credit to the station manager in which he gets the overage money, or a debit in which he is charged with the shortage. The evidence shows that for the week ending September 30, 1959, the respondent was credited with an overage of $1.21. He received and receipted for such overage on October 8, 1959. The evidence also shows that form letters similar to the one in question were sent out by the appellant to all its stations and the procedure followed in each such case was conformable to that used in the instant case.

The appellant issues what is known as a Station Managers Manual and the testimony shows that the respondent, by his signature, acknowledged that he had read and understood the rules of the company. It is provided by these rules that the station manager is directly responsible for the operation of the station and in his absence the assistant manager is responsible for such proper operation. It is also provided that all letters, sales, facts and figures concerning the station, its personnel, sales and operations are strictly confidential and will not be divulged to any person.

The evidence shows that the letter in question, dated September 24, 1959, with the enclosed blue slip, was "intra company correspondence" and was mailed in an envelope

directed to "Spur Oil Station No. 219, South Main Street, Greenville, S. C." This letter was received through the United States mail on September 25 or 26, at about 10:30 A.M., by James W. Watkins, the assistant manager, while the respondent had gone to the bank to make a deposit for the service station. Watkins opened and read the letter and also read such letter to G. E. Owens, a station salesman. Watkins testified that when a manager of a station makes a report to the company with reference to premium coupons and the cash received in connection therewith, and the report doesn't balance, the company takes it up with the manager and "sometimes its overage and sometimes its shortage." He further testified that when this situation arises "they send an over and short slip. Every week you get an over and short slip. It will tell you down one column it will say short and one column it will say over."

We think that this appeal can be disposed of by determining whether in the circumstances under which the alleged libelous letter and accompanying slip were published, assuming the letter and slip to be legally libelous, the occasion was privileged. The appellant contends that the trial Judge committed error in refusing its motion for a nonsuit, directed verdict or judgment *non obstante veredicto* because the testimony clearly showed that the alleged libelous communication was qualifiedly privileged.

In 33 Am. Jur., Libel and Slander, section 126, at page 124, with reference to a definition of qualified privilege, it is said:

"* * * A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communica-

tion may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits."

The foregoing rule has been adopted in the decisions of our own Court. *Fitchette et al. v. Sumter Hardwood Co. et al.,* 145 S. C. 53, 142 S. E. 828; *McClain v. Anderson Free Press,* 232 S. C. 448, 102 S. E. (2d) 750.

In the case of *Rowell v. Johnson et al.,* 170 S. C. 205, 170 S. E. 151, this Court said:

"In Newell on Slander and Libel (4th Ed.), 418, the writer says: 'But it must be remembered that although the occasion may be privileged, it is not every communication made on such occasion that is privileged. It is not enough to have an interest or duty in making a communication; the interest or duty must be shown to exist in making the communication complained of. A communication which goes beyond the occasion exceeds the privilege.'

"In 36 C. J., 1248, we find: 'The protection of the privilege may be lost by the manner of its exercise, although the belief in the truth of the charge exists. The privilege does not protect any unnecessary defamation. In order for a communication to be privileged, the party making it must be careful to go no farther than his interests or his duties require.' "

It appears to be generally recognized that communications between officers and employees of a corporation, whether operating in the same office or in different and distinct offices, are qualifiedly privileged if made in good faith and in the usual course of business. 33 Am. Jur., Libel and Slander, section 171, at page 166. *Bosdell v. Dixie Stores Co.,* 168 S. C. 520, 167 S. E. 834.

In determining whether or not the communication by the appellant was qualifiedly privileged, regard must be had to the occasion and to the relationship of the parties. The appellant here was the employer and the respondent its employee. Certainly, the appellant had an interest to be upheld in sending the letter and blue slip and such was limited in scope to this purpose. The communication was, therefore, made on a proper occasion and in a proper manner, and was sent to its station in Greenville, South Carolina. Since the station manager, or in his absence the assistant manager was responsible for the proper operation of its gasoline filling station, either of said parties was a proper party to receive said communication because each of them had a common interest in the communication. As we view the record, there is no evidence to show a lack of good faith on the part of the appellant in sending the letter and blue slip. We think the evidence shows that such was sent in good faith and in the usual course of business. This is the only reasonable inference that can be deduced from the evidence in this case.

What was said in the case of *Bell v. Bank of Abbeville*, 211 S. C. 167, 44 S. E. (2d) 328, is appropriate. We quote the following:

"In proceeding to a consideration of the testimony, the question before us may be stated to be: Assuming the statements in question to be slanderous in character, were they uttered in good faith in the pursuit of the business of the bank by and to persons who had a right to hear and consider such statements, at a time and place and in a manner and under circumstances which effectually negative the existence of a purpose to injure and defame the respondent; or were the statements made maliciously, or without any proper occasion for the making of same, and in such manner or under such circumstances that it may be reasonably inferred that the object of the parties was not to *bona fide* act in the pursuant of the business of the appellant, but to use the excuse of a meeting of the officers and directors to injure and defame the respondent?

"In answering these questions we are not concerned with the guilt or innocence of the respondent in respect to the matters charged in the alleged slanderous statements quoted in the complaint and disclosed by the testimony. The very essence of the respondent's case, both as alleged in the complaint and as shown by the testimony, is that the cashier of the bank quoted to the respondent, in the presence and hearing of two directors of the bank, complaints which the cashier stated had been made by customers as to the manner in which the respondent handled their banking transactions, and by persons connected with the bank as to matters which seemed to them to be irregular and improper."

It is undisputed that the four irregularities which form the basis of the respondent's complaint existed. This Court can find no evidence in the record to support the conclusion that the appellant abused its qualified privilege as a means of defaming the respondent. Again, we quote from *Bell v. Bank of Abbeville, supra*:

"Reverting to the primary question wherther there is in the record any credible testimony pointing to the fact that the occasion was used for the unlawful purpose of defaming and injuring the respondent, rather than to make a *bona fide* inquiry into complaints against the handling of the bank's affairs, we are unable to find in the record anything substantial upon which to support the burden which rested on the respondent to prove his case."

Having reached the conclusion that the communication sent by the appellant to its office in Greenville was an occasion of qualified privilege, this rebuts the inference of malice and, in order to overcome the defense of qualified privilege, the burden was upon the respondent to show express malice or malice in fact on the part of the appellant toward the respondent. *Cartwright v. Herald Publishing Company et al.,* 220 S. C. 492, 68 S. E. (2d) 415; *Kirby v. Gulf Refining Company et al.,* 173 S. C. 224, 175 S. E. 535; *Bell v. Bank of Abbeville,* 208 S. C. 490, 38 S. E. (2d) 641.

We have carefully examined the record in this case for any evidence showing that the appellant was actuated by ill will or malice in making the communication here involved. There is no evidence of probative value upon this issue. We think that the circumstances under which the letter and the accompanying blue slip was written presents a case of "qualified privilege" unaccompanied by any circumstances tending to show a malicious intent to injure the respondent.

The exceptions which assign error in refusing to grant the motions of the appellant for a directed verdict and judgment *non obstante veredicto* are sustained and this case remanded to the lower Court for entry of judgment, under Rule 27, in favor of the appellant.

Reversed.

TAYLOR, C. J., LEWIS and BUSSEY, JJ., and LEGGE, Acting J., concur.