**Maxine B. COOPER, Plaintiff,**

v.

**LABORATORY CORPORATION OF AMERICA HOLDINGS, INC., Defendants.**

**No. 95–1019–22BE.**

United States District Court, D. South Carolina, Florence Division.

March 18, 1997.

Stuart Wesley Snow, Florence, SC, for Plaintiff.

David Eidson Dukes, Columbia, SC, Lisa Woodbury Caldwell, Jane Thompson Davis, Nelson Mullins Riley and Scarborough, L.L.P., Charleston, SC, for Defendants.

## ORDER

CURRIE, District Judge.

This action arises out of Plaintiff's April 7, 1994, termination by former Defendant Esab Group, Inc. (hereinafter "Esab").[1] Esab terminated Plaintiff after receiving an alcohol-positive urine test report from Defendant Lab Corp.

Pursuant to Local Rule, this matter was referred to United States Magistrate Judge Margaret B. Seymour. Under the authority of 28 U.S.C. § 636(b)(1)(A) and Rule 72(a), Fed.R.Civ.P., a Magistrate Judge is authorized to enter an order on a pretrial matter that is not dispositive of a claim. In contrast, when a dispositive motion such as a motion for summary judgment is filed, Rule 72(b) provides that a Magistrate Judge should enter a Report and Recommendation on the matter. A party objecting to a pretrial order of a Magistrate Judge must file objections within 10 days after being served with a copy of the order, and a party objecting to a recommended disposition in a Report must file objections within the same 10 day period. Rule 72(a) & (b), Fed.R.Civ.P.

The matter is before the court on two separate matters. The first is an appeal by Plaintiff of a February 18, 1997, order of the Magistrate Judge granting Lab Corp's Motion to Exclude the Testimony of pharmacist David Sweeney. Plaintiff timely filed her objections to the order on February 27, 1997. The second matter presents Plaintiff's Objections to a Report and Recommendation of the Magistrate Judge filed February 18, 1997. The Report recommended that Defendant Lab Corp's Motion for Summary Judgment be granted in full. Plaintiff timely filed her objections to the Report on February 27, 1997.

## I. Standard of Review

A district judge to whom an appeal of a Magistrate Judge's order is directed shall consider such objections and shall modify or set aside any portion of the order found to be clearly erroneous or contrary to the law. Rule 72(a). With regard to a dispositive motion, the Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* review of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1). It is with the preceding standards in mind that the court has considered the February 18, 1997, order and Report of the Magistrate Judge.

## II. Factual Background

The court finds that the facts of this case are adequately set forth in the February 18, 1997, Report on pages 1–2, and need not be reiterated here. The court is aware that Plaintiff's Objections to the Report propose that the court specifically incorporate 32 additional factual findings in its order. These proposed factual findings are supported in

---

1. On September 6, 1996, a stipulation of dismissal was entered as to Defendant Esab. On September 25, 1996, a consent order of dismissal without prejudice of the cross-claims of Defendants was filed. Thus, the only remaining Defendant is Laboratory Corporation of American Holding, Inc. (hereinafter "Lab Corp") and the only remaining claims against it are for gross negligence, defamation, and intentional interference with contractual relations.

various interrogatory responses and depositions that comprise the record in this case. The court has carefully studied all 32 of the proposed factual findings and has considered them in ruling on the two matters under consideration. The court has considered these additional matters because the party opposing summary judgment is entitled to have all inferences drawn in its favor.

However, the court declines to expand on the factual background set forth in the Report. There is simply no requirement that the factual summary be an exhaustive catalogue of all record evidence favorable to both sides. Accordingly, the court declines to adopt Plaintiff's 32 proposed factual findings set forth in its Objections to the Magistrate Judge's Report. However, as noted above, the court has taken them into consideration in ruling below on Lab Corp's summary judgment motion.

### III. Order Granting Lab Corp's Motion to Exclude Testimony of David Sweeney

Plaintiff proposed that pharmacist David Sweeney be permitted to offer the following three opinions: (1) that the test results reported by Lab Corp are not reliable evidence of alcohol consumption; (2) that Lab Corp should have known that Esab would rely on the positive test results as reliable evidence of alcohol consumption; and (3) that the positive test results were most likely due to fermentation of glucose in the diabetic Plaintiff's urine.

Lab Corp challenged the admissibility of such testimony on two distinct grounds. First, Lab Corp argued that Mr. Sweeney's opinion is inadmissible under Rule 702, Fed. R.Evid., because he is not qualified by knowledge, skill, experience, training or education to render the preceding opinions. Lab Corp further argued that even if the court found that Mr. Sweeney was a qualified expert, that his opinions did not represent reliable "scientific knowledge" as required under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Defendant charged that Mr. Sweeney's opinions were mere unsupported speculation, were not the product of applied scientific technique or methodology, and had not been subject to peer review by anyone in the toxicological laboratory testing field.

Plaintiff responded that Mr. Sweeney's opinion that the Lab Corp test results were not reliable evidence of alcohol consumption was buttressed, in part, by the opinions of Lab Corp's own experts. She contended that Mr. Sweeney's opinion that Lab Corp should have known Esab would have relied on its results as reliable evidence of alcohol consumption was grounded in common sense, and that the fermentation opinion was grounded on the fact that Plaintiff is a Type 2 diabetic, with a known history of high blood sugars, and that the urine specimens were stored at room temperature for 24 to 30 hours before testing.

Relying on Rule 702, the Magistrate Judge concluded that Mr. Sweeney was not qualified by knowledge, skill, experience, training or education to offer the opinions that (1) the positive test results were not reliable evidence of alcohol consumption; and (2) that Lab Corp should have known Esab would rely on the test as evidence of alcohol consumption. This conclusion rested primarily on the fact that Mr. Sweeney is unfamiliar with the standards for urine alcohol testing and the industry standards with respect to toxicological testing laboratories. Relying on *Daubert*, the Magistrate Judge found that Mr. Sweeney's fermentation opinion was purely speculative and was not tied to known scientific conclusions based on research or studies. Accordingly, the Magistrate Judge concluded all three opinions were inadmissible either because Mr. Sweeney was unqualified to render such an opinion, or because such opinion failed *Daubert*.

Rule 702 provides that scientific, technical, and other specialized knowledge is admissible at trial if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. The Supreme Court has set forth a two-part test that must be met for scientific evidence to be admissible under Rule 702—the trial judge must ascertain that the evidence is (1) relevant and (2) reliable. *Daubert*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Reliability must be based upon scientific va-

lidity of some sort, depending on what the evidence seeks to demonstrate and various other factors. *Id.* 509 U.S. at 590 n. 9.

The Fourth Circuit has explained the *Daubert* test as requiring: (1) that "the expert testimony must consist of 'scientific knowledge'—that is, the testimony must be supported by appropriate validation, and (2) the evidence or testimony must 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Powers,* 59 F.3d 1460, 1470–71 (4th Cir.1995). The types of factors that trial courts should consider when evaluating scientific validity are: (1) whether the theory or technique used by the expert can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used; and (4) the degree of the method's acceptance within the relevant community. *Id.* at 1471.

Plaintiff's objections challenge all three rulings. As to Mr. Sweeney's opinion that the test results were not reliable evidence of alcohol consumption, Plaintiff argues that "one does not have to possess any knowledge of standards peculiar to the urine drug testing industry in particular to be able to testify that a result which is most likely due to fermentation is not reliable evidence of consumption." Objections to Order, at 5. Thus, Plaintiff's objection to this ruling rises or falls on the correctness of the Magistrate Judge's ruling excluding the fermentation opinion. Obviously, if the fermentation theory is inadmissible then Plaintiff's argument fails in totality. Accordingly, the court will continue its examination of the two other rulings.

As to the opinion that Lab Corp should have known its customers would rely on its results as reliable evidence, Plaintiff argues that this opinion is "more in the nature of facts underlying his opinion rather than opinion." *Id.* Reclassifying this opinion as "underlying" fact will not save Mr. Sweeney's opinion from inadmissibility where the proposed expert simply has no experience with the toxicological industry standards and customs between such laboratories and their customers. The court concludes that the

Magistrate Judge's ruling as to this opinion is neither clearly erroneous nor contrary to the law.

As to the ruling striking Mr. Sweeney's opinion on fermentation, Plaintiff objects that the Magistrate Judge has confused "scientific" and "technical" knowledge, and erred in ignoring Mr. Sweeney's testimony concerning the published literature he reviewed. However, this court concludes that the Magistrate Judge appropriately weighed the *Daubert* factors in concluding that Plaintiff failed to show that Mr. Sweeney's fermentation opinion was grounded in reliable scientific knowledge. The record fully supports the conclusion that Mr. Sweeney's fermentation opinion is not tied to known scientific conclusions based on research or studies, and is, accordingly, inadmissible under *Daubert.* It follows that because the fermentation opinion is inadmissible, then Mr. Sweeney's opinion that Lab Corp should have known that Esab would construe its test results as reliable evidence of alcohol consumption also fails because it hinges on the admissibility of the fermentation theory.

In summary, therefore, because the court concludes that none of the Magistrate Judge's three rulings concerning Mr. Sweeney's proposed opinions are clearly erroneous or contrary to the law, Fed.R.Civ.P. 72(a), IT IS THEREFORE ORDERED that the Magistrate Judge's Order of February 18, 1997, on Lab Corp's Motion to Exclude the Testimony of David Sweeney is AFFIRMED.

## IV. Report Recommending Grant of Lab Corp's Motion for Summary Judgment

### A. Gross Negligence Claim

Plaintiff contends Lab Corp was grossly negligent in failing to advise Esab that Plaintiff's alcohol positive test report could have resulted from factors other than alcohol consumption. In recommending grant of summary judgment on this claim, the Magistrate Judge concluded that Lab Corp owed no duty to the noncustomer Plaintiff when it reported Plaintiff's test result to Esab. Although recognizing that laboratories have a duty to perform tests in a nonnegli-

gent manner, the Magistrate Judge correctly distinguished those cases from the present one in which the test results reported were indisputably correct *at the time the testing was performed.* Of course, the controversy here arises from Plaintiff's argument that the test results were flawed because of the passage of time before testing and the unrefrigerated conditions under which Plaintiff's sample was kept. This theory, previously referred to as the "fermentation theory," was, however, unsupported by any qualified expert testimony. Moreover, even assuming *arguendo* that Plaintiff had produced a qualified expert who produced reliable scientific testimony on the fermentation theory, Plaintiff could still not prevail. Although the fermentation theory could be evidence sufficient to establish causation, it would not relieve Plaintiff of her burden of establishing a breach of a duty owed by Lab Corp to her. Here, Plaintiff failed to introduce any evidence that an industry standard, regulation or custom required the refrigeration of urine samples pending testing. Accordingly, Plaintiff failed to adduce evidence of breach of a duty, an essential element of a gross negligence claim.

The Magistrate Judge relied on three similar cases that all concluded no duty in tort flowed from a laboratory to a noncustomer employee based on an action collateral to the correctness of the actual testing. *Santiago v. Greyhound Lines, Inc.,* 956 F.Supp. 144 (N.D.N.Y.1997); *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347 (Tex.1995); *Caputo v. Compuchem Labs.,* 1994 WL 100084 (E.D.Pa. 1994), *aff'd,* 37 F.3d 1485 (3d Cir.1994).

The Magistrate Judge further rejected Plaintiff's contention that the Mandatory Guidelines for Federal Workplace Drug Testing Programs, 59 Fed.Reg. 29908, applied to a private entity such as Esab and required that it employ a Medical Review Officer to interpret the test results.

Plaintiff objects that under South Carolina law a consultant owes a duty to a non-contracting third party to exercise due care to accurately report objective factual data concerning the third party, if the consultant knows or reasonably should know that its report is intended to be used by the contract-

ing recipient of the report to effect the business of the third party, *citing State Ports Authority v. Booz–Allen & Hamilton,* 289 S.C. 373, 346 S.E.2d 324 (1986). However, as noted above, Plaintiff has failed to establish a breach of any duty owed to her. Plaintiff has attempted to impute to Lab Corp knowledge of Plaintiff's diabetic condition and impose extra-reporting duties on Lab Corp that are simply without foundation in the record or in the law.

The court has also considered Plaintiff's remaining objections as to the gross negligence claim and finds them without merit. Accordingly, the court concludes that the Report's recommendation as to the gross negligence claim should be adopted and incorporated by reference.

### B. Defamation

■ Plaintiff contends Lab Corp defamed her by publishing the test results to Esab with the implied representation of recent alcohol consumption. The Magistrate Judge recommended grant of summary judgment on this claim on two independent grounds. First, she concluded that no defamation occurred when the statement was true, *Anderson v. Stanco Sports Library, Inc.,* 542 F.2d 638 (4th Cir.1976), and here the undisputed record showed the test result reported was accurate *at the time the test was performed.* As the Report observed, "[t]he interpretation of the results which arguably impeached Plaintiff's reputation and caused her injury was assigned by Esab, not [Lab Corp]." Report at 10. Here, Plaintiff has already maintained and settled her claim with Esab. She cannot seek to shift to Lab Corp those wrongs which were by law arguably assigned to and apparently assumed by Esab. The second ground for grant of summary judgment rested on a finding that Lab Corp enjoyed a qualified privilege in reporting the information to Esab, which could only be overcome by a showing of actual malice, *Austin v. The Torrington Co.,* 810 F.2d 416 (4th Cir.1987).

■ Plaintiff argues that Lab Corp committed indirect defamation through innuendo, insinuation and conduct, and that this issue should be submitted to a jury. However, as

explained above, Lab Corp fulfilled its established duties under the law in the reporting of the test results. Defamation, if any occurred at all, came at the hands of Esab who wrongly inferred from the numerical data that Plaintiff had consumed alcohol. Plaintiff concedes Lab Corp's actions are subject to a qualified privilege, but argues that the privilege was lost here when Plaintiff advised Lab Corp she was a diabetic before being tested the second time, for which another positive reading resulted. Plaintiff contends Lab Corp had a duty to retract its report, and its failure to do so is evidence of actual malice. However, as stated above, Lab Corp's duty under the law was simply to report the test results in a nonnegligent manner. Because Lab Corp's legal duty was to report accurate results based on the time of performing the test, and no industry standard required Lab Corp to refrigerate Plaintiff's sample, Lab Corp had no duty to retract its second test result. Moreover, Plaintiff was informing her employer Esab at that same time that she was diabetic and that therefore the second positive test result must have arisen from that condition. Lab Corp had no independent means of verifying whether in fact Plaintiff was diabetic or whether in fact Plaintiff was simply trying to make excuses for a second positive test result. Any duty to sort out fact from fancy as far as the cause of Plaintiff's positive result lay in Esab's hands, with whom Plaintiff has already settled. As a practical matter, it appears that even if Lab Corp had retracted its second test report the action would have not avoided Plaintiff's termination because Esab chose to reject an alcohol negative blood test report submitted to Esab from Plaintiff's physician. Plaintiff has therefore failed to establish any malice by Lab Corp toward Plaintiff arising from Lab Corp's refusal to retract the second positive result. Accordingly, the court agrees with the Report's twin conclusions that Lab Corp did not defame Plaintiff and that it was protected by a qualified privilege in its reporting of Plaintiff's results to Esab.

### C. Intentional Interference with Prospective Contractual Relations

■ Plaintiff contends that Lab Corp interfered with Plaintiff's relationship with Esab by reporting a positive alcohol result in Plaintiff's urine sample without disclosing that it may not be reliable evidence of consumption. In recommending grant of summary judgment on this claim, the Magistrate Judge concluded that Plaintiff had failed to prove the first element of an intentional interference claim, i.e., that Lab Corp must have intentionally interfered with Plaintiff's contractual relations with Esab. The Report reasoned that Lab Corp did not cause Esab to interpret the positive result in the way that it did, nor did it cause Esab to discharge Plaintiff. Plaintiff admitted that no one at Lab Corp even knew whether she was an Esab employee or applicant.

Plaintiff's objections as to this claim retread familiar ground: that Lab Corp falsely insinuated that Plaintiff consumed alcohol; that it knew its results would be relied upon by Esab; that it knew her results were due to fermentation; and that there should have been a Medical Review Officer to interpret the results for Esab. All of these contentions have been squarely rejected above and not one of them individually nor all of them cumulatively establishes the slightest evidence that Lab Corp intended to interfere with Plaintiff's contractual relations with Esab. Accordingly, the court accepts the Report's conclusion on this claim.

### V. Conclusion

IT IS THEREFORE ORDERED that the Magistrate Judge's Order of February 18, 1997, granting Lab Corp's Motion to Exclude Testimony of David Sweeney is AFFIRMED.

IT IS FURTHER ORDERED that the Report and Recommendation of February 18, 1997, is adopted and incorporated by reference, and that Defendant Lab Corp's Motion for Summary Judgment is GRANTED in full.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

SEYMOUR, United States Magistrate Judge.

This matter is before the court on motion of Defendant Laboratory Corporation of

America Holdings, Inc. (LCAH) for summary judgment.

## I. FACTS

Plaintiff Maxine B. Cooper was employed by The Esab Group, Inc. (Esab). On March 22, 1994, a urine specimen provided by Plaintiff to Esab tested positive for alcohol. When informed of the positive result, Plaintiff informed Esab that she did not drink alcohol because she is a diabetic. Plaintiff provided Esab with a second urine specimen on April 4, 1994, which also tested positive for alcohol. Both specimens had been analyzed by Roche Biomedical Laboratories, Inc., predecessor in interest to LCAH, at the request of Esab.

Plaintiff underwent a blood test administered by her family physician on April 5, which revealed no evidence of alcohol in her blood. She gave this information to Esab. However, Esab declined to accept the results of the blood test, instead choosing to rely wholly on the urine test results generated by Roche. Plaintiff was terminated on April 7, 1994.

Plaintiff brought this action pursuant to the court's diversity jurisdiction on May 15, 1996, alleging numerous state law causes of action. Plaintiff alleges that yeast from her body contaminated her urine specimens and caused the glucose in her urine to ferment, producing ethanol. Thus, the positive test results were not the result of alcohol consumption, but were a consequence of high glucose levels in her urine caused by diabetes. Based on this theory, Plaintiff sought damages from Esab for breach of employment contract, violation of her rights under the South Carolina Bill of Rights for Handicapped Persons, retaliatory discharge, and defamation. Plaintiff also sought damages from LCAH for defamation, gross negligence, and intentional interference with prospective contractual relations.

Esab and Plaintiff subsequently "reached a satisfactory resolution of the issues" and Esab was dismissed from the case by Stipulation of Dismissal filed September 6, 1996.

All cross-claims between Esab and LCAH, as successor in interest to Roche Biomedical Laboratories, Inc., were dismissed without prejudice by consent order filed September 25, 1996.

LCAH filed a motion for summary judgment with respect to Plaintiff's remaining claims, which motion was argued on October 30, 1996.[1] The court has reviewed relevant case law as well as the pleadings, affidavits, exhibits, and memoranda offered by the parties in support of their respective positions. For the reasons set out herein, it is recommended that LCAH's motion be **granted** and the case dismissed.

## II. ANALYSIS

### A. Gross Negligence

Plaintiff asserts that LCAH should have informed Esab that Plaintiff's positive test results could have been caused by factors other than the consumption of alcohol. Plaintiff contends that LCAH knew or should have known that Esab would interpret a positive urine alcohol test as being due to the consumption of alcohol, and that Plaintiff would be subjected to an adverse employment action because Esab would assume that Plaintiff had been intoxicated on the job. Thus, according to Plaintiff, LCAH was grossly negligent and reckless "in providing Plaintiff's urine test results to Defendant Esab, without also reporting that said result did not constitute reliable scientific evidence of recent alcohol consumption by Plaintiff." Amended Complaint, ¶ 53. Plaintiff alleges that as a proximate result of LCAH's negligence, she was terminated by Esab.

A cause of action for negligence requires (1) the existence of a duty on the part of the defendant to protect the plaintiff; (2) the failure of the defendant to discharge the duty; and (3) injury to the plaintiff resulting from the defendant's failure to perform. The absence of any one of these elements renders the cause of action insufficient. *State Ports Auth. v. Booz–Allen & Hamilton, Inc.*, 289 S.C. 373, 376, 346 S.E.2d 324, 325 (1986). The issue of negligence is a mixed question

---

1. Also argued on October 30 was LCAH's motion to exclude the testimony of David Sweeney. That motion has been granted by separate order of this court.

of law and fact. The court must first determine whether a duty arises in one party to exercise reasonable care for the benefit of another under the facts of a given case. The existence and scope of the duty are questions of law. Thereafter, the jury determines whether a breach of the duty has occurred, resulting in damages. *Miller v. City of Camden*, 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct.App.1994).

According to Plaintiff, "[t]he critical issue is whether LCAH, having knowledge or reason to know that Plaintiff's results were due to fermentation rather than consumption, exercised reasonable care in reporting Plaintiff's results to Plaintiff's employer, knowing that the employer would most likely interpret the results as being caused by the consumption of alcohol by Plaintiff, knowing that the employer did not utilize a qualified person ... to review the results, and knowing that the employer would most likely take adverse action against Plaintiff as a result of the reports."

As an initial matter, the court notes that, assuming LCAH had all the knowledge Plaintiff has imputed to it, that knowledge is, of itself, insufficient to impose a duty on LCAH flowing to Plaintiff. Foreseeability of injury, in the absence of a duty to prevent that injury, is an insufficient basis on which to rest liability. Foreseeability itself does not give rise to a duty. *Booz–Allen*, 289 S.C. at 376, 346 S.E.2d at 325. The fundamental question remains: What duty, if any, did LCAH owe Plaintiff when it reported her test results to Esab?

A number of courts have determined that a laboratory owes an employee a duty to perform the test in a non-negligent manner and to accurately report the results to the employer. *See e.g., Stinson v. Physicians Im-*

mediate Care, Ltd., 269 Ill.App.3d 659, 207 Ill.Dec. 96, 646 N.E.2d 930 (Ill.1995); *Lewis v. Aluminum Co. Of America*, 588 So.2d 167 (La.Ct.App.1991); *Elliott v. Lab. Specialists, Inc.*, 588 So.2d 175 (La.Ct.App.1991); *but see Willis v. Roche Biomedical Labs.*, 61 F.3d 313 (5th Cir.1995) (no duty of reasonable care in testing owed to employee). In the cases where a duty to the employee was found, there was evidence that the laboratory negligently performed the tests it had been retained to undertake for the employer. In *Elliott*, for example, drug testing experts concluded that the protocol and methodology of the laboratory were "scientifically inadequate and failed to meet the scientific standards as accepted" when the test was administered. *Id.* at 176. The cases relied upon by Plaintiff are distinguishable from the facts of her case. There is no suggestion in the record that LCAH's analysis of Plaintiff's urine specimens did not conform to recognized practices. Although Plaintiff is of the opinion that LCAH could have conducted additional tests or taken steps to prevent the alleged fermentation or her urine specimens,[2] she does not dispute the methodology employed by LCAH in testing, nor does she claim the figures appearing on the report from LCAH to Esab are inaccurate.

In this case, the cold, hard facts are reliable; it is their interpretation that is at issue. Plaintiff admits as much when she avers that the positive results were "misleading," and therefore inaccurate, because they implied alcohol consumption. However, nothing about the test results falsely indicated Plaintiff had imbibed alcohol. If the tests were "misleading," as Plaintiff asserts, it was solely because Esab assigned a reason to the presence of alcohol.

---

**2.** Plaintiff has not presented testimony from an expert familiar with the policies, procedures, and standards applicable to toxicological testing laboratories. In a professional negligence case, the plaintiff has the burden of proving that the professional failed to conform to the generally recognized and accepted practices in its profession. As a general rule, the standard of care and breach thereof must be established by expert testimony. *Cianbro v. Jeffcoat & Martin*, 804 F.Supp. 784, 790–91 (D.S.C.1992), *aff'd*, 10 F.3d 806 (4th Cir.1993). Plaintiff's only proffered ex-

pert testified in his deposition (1) that he had no knowledge regarding policies, procedures, or standards applicable to toxicological testing laboratories, and (2) that he had no problem with the accuracy of Plaintiff's test results. Deposition of David Sweeney, Part II, pp. 56, 66, 69, 79, 85. Thus, Plaintiff has not met her burden of proving LCAH breached an industry standard in its manner of reporting the test results to Esab. On this basis alone LCAH is entitled to summary judgment as a matter of law. *Id.* at 793.

Despite Plaintiff's attempts to mold the facts into a negligent reporting case, the gravamen of Plaintiff's complaint is that LCAH was negligent for not ensuring that Esab would interpret the results properly. In other words, Plaintiff contends LCAH owed Plaintiff a duty to advise Esab regarding the possibility that Plaintiff's positive results could have been due to fermentation, rather than alcohol consumption.

No court that has addressed a cause of action based on the laboratory's failure to execute an action collateral to the actual testing has found the existence of a duty sounding in tort flowing from the laboratory to the employee. In *Caputo v. Compuchem Labs.*, 1994 WL 100084 (E.D.Pa.1994) (not reported), *aff'd* 37 F.3d 1485 (3d Cir.1994), *cert. denied,* 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995), a potential employee took a urine drug test which revealed, at a very low level, the presence of morphine. The employee was terminated shortly thereafter. The employee subsequently brought an action against the employer and laboratory, contending the morphine was present in his urine because he had eaten something with poppy seeds in it on the day of the drug test. With respect to the laboratory, the employee alleged, among other things, that the laboratory's report was false "because it implied a judgment that the numerical value obtained via the test indicated substance abuse." *Id.* at 2.

The court found no basis to impose upon the laboratory a duty to inform the employer that the low positive number generated by the urinanalysis could have been attributable to causes other than illicit drug use. The court noted:

> Although it may be true, as plaintiff asserts, that the increasing use of drug testing for employment purposes raises serious questions concerning the duties owed by entities seeking and using the tests to current or prospective employees subjected thereto, the fact that there are reasons to be concerned about the uses, potential misuses or abuses of drug test results does not justify imposing additional and unprecedented duties upon a laboratory with the sole function of analyzing a sample and returning a report, particularly when such report is factually accurate.

*Id.* at 4.

The same result was reached in *Smith-Kline Beecham Corp. v. Doe*, 903 S.W.2d 347 (Tex.1995). In that case, a prospective employee brought an action after a positive drug test revealed the presence of opiates in her urine. The employee contended that the positive result was the result of her having eaten poppy seeds, and that the laboratory should have informed her and her prospective employer that eating poppy seeds could cause a positive test result.

The court, relying in part on the reasoning of *Caputo,* held that the laboratory was under no obligation to the *employee* to give advice to the *employer* regarding interpretation of the test results. Rather, the laboratory in *SmithKline,* as in this case, "merely performed a urinalysis and reported the presence of certain drugs or their metabolites. It neither created nor controlled the use to which its test results would be put." *Id.* at 353. In making its decision, the court noted that:

> there is some significant likelihood, which SmithKline could and did foresee, that a person will have a positive drug test due to having eaten poppy seeds.... Foreseeability alone, however, is not sufficient to create a new duty.... The duty Doe seeks cannot be readily defined. It would require SmithKline to inform each test subject not only of the possible effect of poppy seeds but of all possible causes of positive results other than using drugs.... A simple duty to warn of the possibilities that information may be misinterpreted is unworkable.

*Id.* at 353–54 (citations omitted).

Recently, the court in *Santiago v. Greyhound Lines, Inc.,* 956 F.Supp. 144 (N.D.N.Y.1997), also concluded that a laboratory has no duty to an employee collateral to the accurate testing and reporting of the employee's urine specimen. In that case, an employee underwent a urinalysis which tested positive for cocaine. It appears that there were some irregularities in the collection of the specimen from the employee, who was

tested on the same day as a number of co-workers. The employee alleged that the laboratory was negligent in not providing the employer with a procedural guide on how to collect urine samples. The court, relying on *Caputo* and *SmithKline,* determined there was no basis in precedent or policy for imposing on the laboratory "such a profound extension of the elementary duty to test the sample according to the applicable standards of due care." *Santiago,* 956 F.Supp. at 154.

The court finds these cases to be persuasive. Like the various defendant laboratories in *Caputo, SmithKline,* and *Santiago,* LCAH received Plaintiff's urine samples, tested them appropriately, and accurately re-ported the results to Esab. LCAH had no duty to *Plaintiff* to inform Esab of alternate reasons for the positive results. It was Esab's responsibility to educate itself regarding other reasons for the positive results, particularly after Plaintiff informed Esab that she did not consume alcohol. *See SmithKline,* 903 S.W.2d at 354 ("[T]he duty Doe seeks would charge SmithKline with responsibility that belongs to its clients.").

Plaintiff also asserts that LCAH was required by the Mandatory Guidelines for Federal Workplace Drug Testing Programs (the Guidelines) to report the results of Plaintiff's urinalysis to a Medical Review Officer (MRO) designated by Esab. *See* 59 F.R. 29908. This contention is contrary to the plain language of the Guidelines, which provides:

(a) These mandatory guidelines apply to:

(1) Executive Agencies as defined in 5 U.S.C. § 105;

(2) The Uniformed Services, as defined in 5 U.S.C. § 2101(3) (but excluding the Armed Forces as defined in 5 U.S.C. § 2101(2));

(3) And any other employing unit or authority of the Federal Government except the United States postal Service, the Postal Rate Commission, and employing units or authorities in the Judicial and Legislative Branches.

59 F.R. 29908, Subpart A, Section 1.1. Esab is a private entity; it is not a federal agency or other federal unit. LCAH is not required, as Plaintiff alleges, to report the positive results to an MRO employed by Esab. LCAH was obliged to report the results to the appropriate person designated by Esab, which it did. Certainly it is not incumbent upon LCAH to demand that Esab adopt the Guidelines as a condition of procuring test results from LCAH.

Plaintiff also asserts that, because LCAH holds itself out as meeting or exceeding federal government requirements, LCAH should have performed the MRO service for Esab. An MRO is "[a] licensed physician responsible for receiving laboratory results generated by an agency's drug testing program who has knowledge of substance abuse disorders and has appropriate medical training to interpret and evaluate an individual's positive test result together with his or her medical history and any other relevant biomedical information." *Id.* Section 1.2. LCAH is neither a licensed physician nor, with respect to Esab, was it receiving results "generated by an agency's drug testing program." The Guidelines do not impose a duty on LCAH for the benefit of Plaintiff to perform the functions of an MRO.

Plaintiff's position is further weakened because she is unable to demonstrate that industry standards require LCAH to perform additional or different duties from those it undertook for Esab. The court therefore recommends a finding that summary judgment be granted LCAH with respect to Plaintiff's claim for gross negligence.

## B. *Defamation*

Plaintiff also alleges that LCAH defamed her by publishing the results of the urine tests to Esab. Plaintiff alleges that the implied representation of recent alcohol consumption by Plaintiff was untrue and defamatory *per se,* "in that it charge[d] Plaintiff with conduct or characteristics incompatible with the proper performance of her employment." Amended Complaint, ¶ 35.

Under the law of South Carolina, an action for slander requires that the challenged statement be both defamatory and actionable. A defamatory statement is a statement which tends to impeach the plaintiff's reputation. To be actionable, that statement must

also injure the plaintiff. *Austin v. The Torrington Co.,* 810 F.2d 416, 423 (4th Cir.1987) (citing *Capps v. Watts,* 271 S.C. 276, 281, 246 S.E.2d 606, 609 (1978), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987)).

As established above, the test results were factually correct. The urinalyses did not falsely represent that Plaintiff had been intoxicated on the job. LCAH simply reported the results of the urinalyses, without comment or judgment. There is no defamation when a statement is true. *Anderson v. Stanco Sports Library, Inc.,* 542 F.2d 638 (4th Cir.1976). The interpretation of the results which arguably impeached Plaintiff's reputation and caused her injury was assigned by Esab, not LCAH. Thus, the court recommends a finding that LCAH did not defame Plaintiff.

Moreover, any allegedly defamatory statements made by LCAH to Esab were protected by qualified privilege. A qualified privilege is:

> [a] communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, only a moral duty or social duty of imperfect obligation. The essential elements of a conditionally privileged communication [are] good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.

*Conwell v. Spur Oil,* 240 S.C. 170, 125 S.E.2d 270, 274 (1962). In this case, Esab retained the services of LCAH for the purpose of conducting drug and alcohol tests on specimens provided by Esab's current or prospective employees. LCAH reported the results of its analyses to the person designated by Esab. The report was limited to the results of the urinalysis and was offered to Esab from LCAH without opinion regarding the contents. In the court's view, it is appropriate for LCAH to invoke the privilege in this case where there has been nothing more than a simple exchange of factual information made in good faith for the proper purpose of allowing Esab to maintain a drug and alcohol free workplace. *Accord Willis v. Roche Biomedical Labs.,* 61 F.3d 313 (5th Cir.1995).

A qualified privilege may be overcome upon a showing of actual malice. *Austin,* 810 F.2d at 424. Plaintiff asserts that LCAH exhibited malice "insinuat[ing] that Plaintiff had consumed a large quantity of alcohol during or immediately before reporting to her job, when it had knowledge that her positive urine alcohol results were caused by fermentation of glucose." Plaintiff's Memorandum in Response to Motion for Summary Judgment, p. 22. The court has already rejected the notion that LCAH insinuated anything by its mere reporting of test results. Plaintiff also asserts that LCAH was malicious because it refused to investigate Plaintiff's allegations when it was made aware of them by Plaintiff's counsel some two weeks after Plaintiff was terminated. As noted by LCAH's counsel at the hearing, LCAH's client was Esab, not Plaintiff, and it had no duty to take any action with respect to the reports it generated for Esab's benefit except at the request of Esab. Therefore, the court recommends a finding that LCAH may assert the defense of qualified immunity to the extent the positive test reports could be construed as defamatory.

Plaintiff also seeks to hold LCAH liable for Plaintiff's involuntary self-publication to prospective employers that she was terminated from Esab because of the positive test results. As stated previously, however, statements contained in LCAH's reports to Esab were not defamatory. The interpretation of the test results and decision to discharge Plaintiff were solely attributable to Esab. The court can discern no basis upon which LCAH should be held liable for Esab's actions. Accordingly, the court recommends a finding that summary judgment be granted LCAH on the issue of defamation.

C. *Intentional Interference with Prospective Contractual Relations*

Plaintiff contends that LCAH intentionally interfered with Plaintiff's relationship with

Esab by reporting the existence of alcohol in Plaintiff's urine sample "without disclosing that the presence of alcohol in the urine of a diabetic does not constitute reliable scientific evidence of recent alcohol consumption." Amended Complaint, ¶ 64.

To recover on a cause of action for intentional interference with prospective contractual relations, Plaintiff must prove: (1) LCAH intentionally interfered with Plaintiff's potential contractual relations with Esab, (2) for an improper purpose or by improper methods, (3) causing injury to Plaintiff. *Crandall v. Navistar Int'l Trans. Corp.*, 302 S.C. 265, 266, 395 S.E.2d 179, 180 (1990).

As to the first element, Plaintiff asserts that LCAH knew the samples it tested came from a current or prospective employee of Esab, and that positive results would cause Esab to discharge Plaintiff. Once again, Plaintiff seeks to impose liability on LCAH for Esab's decisions. LCAH did not influence Esab's interpretation of the positive test results, nor did LCAH induce Esab to discharge Plaintiff. Plaintiff herself admitted that no one at LCAH knew who she was or whether she was an employee or job applicant at Esab. Plaintiff conceded she did not think anyone at LCAH wanted her to be fired or terminated. Deposition of Maxine B. Cooper, p. 1163. There simply is no foundation in the record to support a finding that LCAH possessed the requisite intent to destroy Plaintiff's employment relationship with Esab. Therefore, the court recommends a finding that summary judgment be granted with respect to Plaintiff's claim for intentional interference with prospective contractual relations.

## III. CONCLUSION

For the reasons set forth hereinabove, it is recommended that LCAH'S motion for summary judgment be **granted.**

The parties are referred to the Notice Page attached hereto and incorporated herein by reference.

February 18, 1997.

## *Notice of Right to File Objections to Magistrate Judge's Report and Recommendation & The Serious Consequences of a Failure to Do So*

The plaintiff is hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R.Civ.P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed.R.Civ.P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. *Advance Coating Technology, Inc. v. LEP Chemical, Ltd.*, 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y.1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See Mathews v. Weber*, 423 U.S. 261, 270–271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); and *Estrada v. Witkowski*, 816 F.Supp. 408, 410 (D.S.C.1993).

During the ten-day period, *but not thereafter*, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied, Schronce v. United States*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984); and *Wright v. Collins*, 766 F.2d 841, 845–847 & nn. 1–3 (4th Cir.1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate

judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *Howard v. Secretary of HHS*, 932 F.2d 505, 508–509 (6th Cir.1991). *See also Praylow v. Martin*, 761 F.2d 179, 180 n. 1 (4th Cir.) (party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 466 (1985). In *Howard, supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. \*\*\* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. \*\*\* We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord Lockert v. Faulkner*, 843 F.2d 1015, 1017–1019 (7th Cir.1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. \*\*\* A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir.1989) ("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and *Goney v. Clark*, 749 F.2d 5, 7 n. 1 (3rd Cir.1984) ("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See Wright v. Collins, supra;* and *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2nd Cir.1989). Filing by mail pursuant to Fed.R.Civ.P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
P.O. Box 2317
Florence, SC 29503